780 F.2d 751
 4 Fed.R.Serv.3d 142
 BEAUDRY MOTOR COMPANY, an Arizona corporation
Plaintiff/Appellant/Cross-Appellee,
v.
ABKO PROPERTIES, INC., a DE corporation (formally known as
Chrysler Realty Corporation); Chrysler Corporation, a De
corporation; Chrysler Motors Corporation, a DE corporation;
and Chrysler Realty Corporation, a DE corporation,
Defendants/Appellees/Cross-Appellants.
 Nos. 84-1888, 84-1889.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 14, 1985.
Decided Jan. 9, 1986.
 
 D. Michael Mandig, Molloy, Jones, Donahue, Trachta, Childers & Mallamo, Tucson, Ariz., for plaintiff/appellant/cross-appellee.
 David L. White, Donn G. Kessler, Jennings, Strouss & Salmon, Phoenix, Ariz., for defendants/appellees/cross-appellants.
 Appeal from the United States District Court for the District of Arizona.
 Before POOLE, NELSON, Circuit Judges, and KELLEHER, District Judge.*
 POOLE, Circuit Judge:
 
 
 1
 Beaudry Motor Company (BMC) appeals the district court's order granting summary judgment for defendants, its order denying BMC's post-judgment motions for a new trial and for permission to amend the complaint, and its order granting defendants attorneys' fees. Defendants Abko Properties, Inc., Chrysler Corporation, and Chrysler Realty Corporation cross-appeal from the denial in part of their attorneys' fee request. We decline to address the merits of BMC's appeal of the district court summary judgment and post-judgment orders since we hold the appeal as to these issues untimely. We reverse and remand the issue of attorneys' fees for the district court to set forth its consideration of the factors announced in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir.1975), cert. denied sub nom., 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).
 
 I.
 Facts
 
 2
 BMC is a Chrysler franchise automobile dealer in Tucson, Arizona. With the goal to relocate BMC to a more competitive location in Tucson, Chrysler Realty Corporation (CRC) with BMC's approval purchased a tract of property for the dealership. Originally, CRC planned to retain title to the real estate, build a new dealership facility and lease it to BMC.
 
 
 3
 CRC, however, encountered difficulty obtaining suitable bids for construction of the facility, and so suggested that BMC itself purchase the property and develop it. BMC was receptive to this idea, but soon discovered that local lenders refused to finance the full amount needed without the additional security of a "lease/sublease" agreement between BMC and CRC. Such an agreement was reached and BMC borrowed the necessary funds. Thereafter, CRC deeded the property to BMC, with BMC executing a twenty-five-year note and a deed of trust to the lending bank. CRC and BMC also entered into a leasing arrangement whereby BMC leased the property to CRC and CRC in turn subleased the premises to BMC. The lease and sublease were for twenty-five years with five options of five years each. Rent obligations for the lease and sublease were identical. BMC assigned its right to rent payments to the bank in order that CRC would become obligated to make rent payments to the bank in the event that BMC became insolvent.
 
 
 4
 After several years BMC became dissatisfied with the lease arrangement as it wanted to use the realty for other, more profitable ventures. Negotiations with CRC to sell or lease a portion of the property were unsuccessful. Thereafter, in 1979, Chrysler Corporation sold CRC to Abko Realty, Inc. (Abko) and Abko assumed CRC's obligation under the lease agreement. In 1982, BMC began negotiating with Abko to terminate the lease/sublease agreement. These negotiations were also unsuccessful.
 
 
 5
 In 1982, BMC obtained from the bank's successor-in-interest a release of the lease assignment. BMC again sought to terminate the lease/sublease with Abko. After this offer was rejected, BMC filed an action in Arizona state court claiming that the agreement was unconscionable or a violation of state antitrust laws.
 
 
 6
 Abko removed the action to federal court on diversity grounds. Subsequently, Abko sold its CRC interest back to Chrysler. BMC thereafter filed first and second amended complaints adding Chrysler Corporation and CRC as defendants and alleging federal antitrust claims and a state antitrust claim and asking for declaratory relief on the lease agreement on the ground of unconscionability.
 
 
 7
 Defendants moved for summary judgment on the theory that BMC's claims were time-barred and did not raise a justiciable controversy. They also moved for an award of attorney fees. In response, BMC filed a cross-motion for summary judgment in which BMC raised for the first time a new theory that the lease/sublease was a statutory mortgage or, in the alternative, a security device under common law. BMC argued that since the bank had released the security, the district court should impose a constructive trust and compel reconveyance of the leasehold to BMC.
 
 
 8
 At argument on the motions, BMC's counsel admitted that he was abandoning the antitrust claims. Concluding that the amended complaint failed to allege a constructive trust theory, the district court granted defendants' motion for summary judgment. Judgment was entered on December 7, 1983.
 
 
 9
 BMC thereafter filed a timely motion for a new trial and sought permission from the court to amend its complaint to allege the new theories. On January 5, 1984, the district court entered a minute order denying BMC's motions "[f]or [the] reasons set forth in defendant's [sic] response to plaintiff's motions for new trial and to amend complaint." Copies of the minute order were mailed to counsel, and plaintiff's counsel received his copy on January 9, 1984.
 
 
 10
 Defendants' motion for attorneys' fees was argued January 23, 1984. On March 21, the district court entered an order finding that defendants were entitled to an award of $8,000. On April 20, BMC filed its notice of appeal. Defendants timely cross-appealed from the denial in part of their fee request.
 
 II.
 Timeliness of BMC's Appeal on the Merits
 
 11
 Before this court, defendants moved to dismiss BMC's appeal of the merits on the ground that BMC's notice of appeal was filed more than thirty days after the district court's denial of BMC's post-judgment motions. A panel of this court denied the motion leaving to us the consideration whether the January 5 order should be deemed a judgment or order within the meaning of Fed.R.Civ.P. 58.
 
 
 12
 Fed.R.App.P. 4(a) requires that a notice of appeal in a civil case be filed within thirty days after the date of entry of the judgment or order appealed from. A timely motion for a new trial under Fed.R.Civ.P. 59, however, stays the time for appeal. Fed.R.App.P. 4(a)(4). A new notice of appeal must then be filed within thirty days, measured from the entry of the order disposing of the post-judgment motion. Id. These time periods for appeal are jurisdictional and cannot be waived by the parties. Browder v. Director, Illinois Department of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978).
 
 
 13
 It is the date of "entry" of a judgment or order that starts the time period for noticing an appeal. A judgment or order is not entered within the meaning of Fed.R.App.P. 4(a) unless it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure. Calhoun v. United States, 647 F.2d 6, 8 (9th Cir.1981); Fed.R.App.P. 4(a)(6). Rule 58 requires that every judgment be set forth on a separate document,[1] and Rule 79(a) details the civil docketing procedure to be followed by the district court clerk when entering the judgment.[2]
 
 
 14
 BMC makes several arguments that its notice of appeal filed 110 days after the January 5 order is timely. First, BMC contends that the minute order denying its post-trial motions is not a judgment or order within the meaning of Fed.R.Civ.P. 58. Second, it argues that the minute order did not meet the entry requirements of Fed.R.Civ.P. 79(a). Last, BMC argues that the judgment on the merits was not final absent compliance with Fed.R.Civ.P. 54(b) while the motion for attorneys' fees was pending. The earlier panel rejected the latter arguments and left to us the resolution of the first. Nevertheless, the motion panel's entire order is subject to reconsideration. See In re Commercial Western Finance Corp., 761 F.2d 1329, 1332 n. 6 (9th Cir.1985); United States v. Humphries, 636 F.2d 1172, 1174 n. 2 (9th Cir.1980), cert. denied, 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981).
 
 
 15
 Rule 58 provides that when relief is denied by the court, the clerk, unless otherwise directed by the court, "shall forthwith, prepare, sign, and enter the judgment * * * * " Fed.R.Civ.P. 58. BMC contends that the January 5 minute order fails to comply with the rule because it was not signed and does not purport to be an order disposing of the pending motions. BMC relies on Weldon v. United States, 196 F.2d 874 (9th Cir.1952) and Calhoun v. United States, 647 F.2d 6 (9th Cir.1981) for support.
 
 
 16
 In Weldon, what was filed with the clerk of the district court was an unsigned, typewritten paper labeled "Minute Order," which denied plaintiffs' petitions. This court held that the minute order could not be regarded as an order of the district court because the record failed to show that the district court wrote or filed the minute order or caused it to be written or filed. Weldon, 196 F.2d at 876. In addition, this minute order was never noted in the civil docket, and thus, never became effective or appealable. Id. Here BMC concedes that the minute order was prepared at the direction of the district judge. The order also was noted in the civil docket. Finally, the court's copy of the order is file stamped and signed by a deputy clerk. Apparently the copy mailed to counsel was file stamped but unsigned. This fact, however, does not alter our conclusion. The copy of the minute order with its language "IT IS ORDERED" clearly put plaintiff's counsel on notice that an order had been entered against his client. Faced with this language and the presence of a file stamp on the document, counsel should have checked the court's record if he had any doubt about whether the order was signed rather than allow the period for appeal to expire and risk the possibility that a signed order in fact had been entered.[3]
 
 
 17
 BMC's reliance on Calhoun is also misplaced. The document at issue in Calhoun simply showed that proceedings were held and that the "[m]otion [was] argued and ordered denied." 647 F.2d at 8. The document, although signed and docketed by the clerk, contained no filing or other stamp of the district court. Moreover, the clerk did not mail copies to the parties. This court concluded that the document failed to comply with Rule 58 because it did not constitute a separate "order" but instead appeared to be a notation of the court's proceedings. Id. at 9.
 
 
 18
 These circumstances are absent here. The January 5 order, although labeled "Civil Minutes-General," does not reference proceedings but is clearly by its language a decision of the court. Both the order and the docket sheet indicate that the clerk treated the document as an order and mailed copies to counsel. Thus, we find that the January 5 order sufficiently complied with Rule 58.
 
 
 19
 Fed.R.App.P. 4 also requires that an appealable order be entered in compliance with Rule 79(a). Rule 79(a) mandates, inter alia, that all orders be entered chronologically in the civil docket with each entry briefly showing both the date the order was entered and the substance of the order. Fed.R.Civ.P. 79(a).
 
 
 20
 The district court docket referencing the January 5 minute order reflects the following notation:
 
 
 21
 Date N.R. Proceedings
 
 
 22
 ---- ---- -----------
 
 
 23
 01/05 62 M/E (ACM): For reasons set forth in Dft resp to Pltf
 
 
 24
 Mots for New Trial and to Amd Cmplt, ORD that Plft
 
 Mots are DENIED. (cc: Mandig, White, ACM)
 
 25
 We agree with the motion panel that the docket sheet entry complies with the requirements of Fed.R.Civ.P. 79(a). The entry briefly states the substance of the minute order as being an order denying BMC's post-judgment motions, and it sufficiently demonstrates the date upon which entry was made. Cf. Calhoun, 647 F.2d at 9.
 
 
 26
 Moreover, we also reject BMC's contention that the final judgment on the merits was not final absent compliance with Fed.R.Civ.P. 54(b) while defendants' motion for attorneys' fees was pending. Rule 54(b) has no application to motions for attorneys' fees. International Association of Bridge, Structural, Ornamental, and Reinforcing Ironworkers' Local 75 v. Madison Industries, Inc., 733 F.2d 656, 658 (9th Cir.1984) (a judgment on the merits is final and appealable even though a request for attorneys' fees is pending); Swanson v. American Consumer Industries, Inc., 517 F.2d 555, 571 (7th Cir.1975) (Rule 54(b) inapplicable to outstanding claim for attorneys' fees). We conclude that the district court's January 5 minute order constituted a final appealable order under 28 U.S.C. Sec. 1291 (1982). Because BMC failed to file its notice of appeal within the thirty-day period prescribed by Fed.R.App.P. 4(a), its appeal of the merits is untimely, foreclosing appellate review of those issues. See Scott v. Younger, 739 F.2d 1464, 1466 (9th Cir.1984).[4]
 
 III.
 Attorneys' Fees
 
 27
 Defendants requested attorneys' fees of $73,594 for prevailing on their summary judgment motion. The district court awarded defendants $8000. BMC timely appeals from the award and argues that no fees are authorized under either federal or state law. Defendants cross-appeal from the reduction of their request. We find the district court's order inadequate for review, and we reverse and remand to the district court to make further findings.
 
 
 28
 An award of fees to the prevailing party is proper if (1) authorized by statute or, (2) the court finds that the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. International Union of Petroleum and Industrial Workers v. Western Industrial Maintenance, Inc., 707 F.2d 425, 428 (9th Cir.1983). The district court held that defendants were entitled to attorney fees under either theory. Because we find that fees properly were imposed under the court's inherent equitable power, we need not decide whether fees were statutorily authorized.
 
 
 29
 We review a district court's finding that the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons under the clearly erroneous standard. Id.; Dogherra v. Safeway Stores, Inc., 679 F.2d 1293, 1298 (9th Cir.), cert. denied, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982). If "bad faith" is found, an award of attorney fees is within the district court's discretion, International Union of Petroleum and Industrial Workers, 707 F.2d at 428, and we will not disturb the award unless the district court has abused its discretion. Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1384 (9th Cir.1984).
 
 
 30
 An award of attorney fees under the "bad faith" exception "is punitive, and the penalty can be imposed 'only in exceptional cases and for dominating reasons of justice.' " United States v. Standard Oil Co., 603 F.2d 100, 103 (9th Cir.1979) (quoting 6 J. Moore, Moore's Federal Practice p 54.77 (2d ed. 1972)); see Hall v. Cole, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973).
 
 
 31
 Here, the district court found that BMC should have been aware that their claims were barred by the statute of limitations because the complaint was filed approximately thirteen years after the lease/sublease was executed and 15 U.S.C. Sec. 15b (1982) provides a four-year statute of limitations for private antitrust actions. BMC's contractual and state antitrust claims were barred by Arizona's statutes of limitation. Ariz.Rev.Stat.Ann. Sec. 12-548 (1982) (six years for contract claims); id. Sec. 44-1410 (Supp.1984) (four years for antitrust claims). Thus, BMC's claims were not colorable. See Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir.1980) ("A claim is colorable * * * when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim."). Moreover, the court noted that once defendants moved for summary judgment, BMC abandoned its antitrust claims and attempted to change its theory on the declaratory relief count. These facts are sufficient to suggest that BMC's institution of this action thirteen years after it entered into the lease agreement with CRC was for an improper purpose, and thus it was not clearly erroneous for the district court to conclude that BMC's claims were brought and maintained unreasonably and in bad faith. See Ellingson v. Burlington Northern, Inc., 653 F.2d 1327, 1332 (9th Cir.1981). As a result, the district court's decision to award attorneys' fees did not constitute an abuse of discretion. International Union of Petroleum and Industrial Workers, 707 F.2d at 428; cf. Standard Oil Co., 603 F.2d at 103-04 (suggests that a showing of bad faith is not even necessary if the relationship of the parties prior to litigation involved some kind of contract or other legal relationship out of which the litigation arose).
 
 
 32
 Although the district court acted within its discretion in awarding defendants attorneys' fees, we cannot affirm the district court's order in its entirety. Defendants requested $73,594 in attorneys' fees. The district court concluded that this amount was excessive and awarded $8000 as fair compensation for the time that reasonably should have been spent in getting the case dismissed. In arriving at this amount, the court stated that it "has considered the factors set forth by the Ninth Circuit in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir.1975)." The court then listed these factors identifying the most important ones it considered. We cannot affirm the district court's order because "[t]he gap between the figures employed by [the party requesting fees] * * * and the amount ordered by the district court is too great to permit a mere recital of having considered Kerr to insulate the order from reversal." Harmon v. San Diego County, 664 F.2d 770, 772 (9th Cir.1982) (as amended); see Domingo v. New England Fish Co., 727 F.2d 1429, 1447 (9th Cir.), modified, 742 F.2d 520 (9th Cir.1984). Consequently, we reverse and remand the award to the district court to provide a more detailed explanation of how it arrived at the final amount of the award in terms of the guidance Kerr provides. We express no opinion as to the proper amount of the ultimate fee award.
 
 
 33
 Defendants also seek reimbursement for attorneys' fees incurred in this appeal. We decline to make such an award as we find BMC's arguments on appeal not wholly devoid of merit. See Masalosalo v. Stonewall Insurance Co., 718 F.2d 955, 958 (9th Cir.1983) (jurisdictional issue concerning effect of filing notice of appeal not frivolous); International Union of Petroleum and Industrial Workers, 707 F.2d at 430 (challenge to fee award not frivolous).
 
 IV.
 Conclusion
 
 34
 BMC's appeal on the merits is dismissed for lack of jurisdiction. The district court's order awarding defendants attorneys' fees of $8000 is reversed and remanded for further findings consistent with this opinion. Defendants' request for an award of attorneys' fees incurred in this appeal is denied. Each party shall bear its own costs on appeal.
 
 
 35
 DISMISSED IN PART; REVERSED AND REMANDED IN PART.
 
 
 
 *
 The Honorable Robert J. Kelleher, Senior District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Rule 58 of the Federal Rules of Civil Procedure provides in part:
 [U]pon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court * * * * Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a).
 
 
 [2]
 Rule 79(a) of the Federal Rules of Civil Procedure provides in pertinent part:
 The clerk * * * shall enter [in the civil docket] each civil action to which these rules are made applicable. Actions shall be assigned consecutive file numbers. * * * All papers filed with the clerk, * * * all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number. These entries shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court * * * * The entry of an order or judgment shall show the date the entry is made.
 
 
 [3]
 This holding comports with the purpose of the separate document requirement. That purpose is to avoid the inequity of a party being denied the opportunity to appeal because of a failure to recognize which of several documents or docket entries constituted "entry" of judgment. Bankers Trust Co. v. Mallis, 435 U.S. 381, 385, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978) (per curiam); Taylor Rental Corp. v. Oakley, 764 F.2d 720, 722 (9th Cir.1985). In this case, plaintiff's counsel received a document, the sole contents of which informed him that his post-judgment motions had been ordered denied and which was file stamped. We have no trouble concluding that in these circumstances a reasonable person would realize that the court had entered an order finally disposing of the case
 
 
 [4]
 Although the time for filing a notice of appeal may be extended upon a showing of excusable neglect, such an extension is foreclosed in this case. The district court may extend the time for filing a notice of appeal only upon motion filed not later than 30 days after the expiration of the time prescribed by Rule 4(a). Fed.R.App.P. 4(a)(5). Here no such motion was made