Casilda NUNEZ–SOTO,
Plaintiff, Appellee,

v.

Carlos ALVARADO, etc., et al.,
Defendants, Appellants.

No. 90–1467.

United States Court of Appeals,
First Circuit.

Heard Sept. 6, 1990.

Decided Nov. 21, 1990.

Rehearing and Rehearing En Banc
Denied Dec. 26, 1990.

Alice Net Carlo, with whom Garcia Rodon, Correa Marquez & Valderas was on brief, for defendants, appellants.

Frank Rodriguez Garcia, with whom Francisco J. Rodriguez Juarbe was on brief, for plaintiff, appellee.

Before BREYER, Chief Judge, VAN GRAAFEILAND,[*] Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BREYER, Chief Judge.

The plaintiff, a career employee at the Puerto Rico Electric Power Authority (PREPA), claims that in 1985 the defendants, for reasons related to plaintiff's political party affiliation, demoted her from her position as "Supervisor of the Classification and Pay Department" (level M–VI) to the position of "Job Analyst" (level M–V). The plaintiff concedes that the defendants did not cut her salary and that they restored her to her former position in 1988. She says, however, that in demoting her and requiring her to work as a job analyst for three years, defendants violated the federal Constitution. *See Branti v. Finkel,* 445 U.S. 507, 516–17, 100 S.Ct. 1287, 1293–94, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). In her complaint filed under 42 U.S.C. § 1983, plaintiff seeks both damages and injunctive relief.

Defendants asked the district court to grant them summary judgment on plaintiff's claim for damages on the ground that the law, as of 1985, did not clearly show that the federal Constitution prohibited a politically motivated *demotion* of a career civil servant. Hence, they are immune from damage liability. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct.

[*] Of the Second Circuit, sitting by designation.

2727, 2738, 73 L.Ed.2d 396 (1982). The district court denied their motion. They now appeal that denial. *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) (interlocutory appeal from denial of qualified immunity defense on summary judgment). The sole question before us is whether, assuming *plaintiff's* version of the facts, "a reasonable official" would have understood *in 1985,* that plaintiff's demotion violated the federal Constitution. *See Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. In our view the relevant law was not clear in 1985. Consequently, we must reverse the district court's judgment.

■ It seems to us fairly obvious that, as of 1985, the law did not *clearly* state that a politically motivated *demotion* violated the federal Constitution. The Supreme Court, of course, had made clear that the Constitution forbids *discharge* of public employees for reasons of political affiliation (unless political affiliation is an appropriate requirement for the job). *See Branti,* 445 U.S. at 516–17, 100 S.Ct. at 1293–94; *Elrod,* 427 U.S. at 373, 96 S.Ct. at 2689. But, the law was unclear about the extent to which the Constitution protected career personnel against politically motivated adverse personnel actions that did not rise to the level of a *discharge.*

Until very recently, for example, the Fourth Circuit consistently maintained that the Supreme Court's *Elrod/Branti* interpretation of the Constitution applied only to adverse personnel actions that amounted to the "substantial equivalent of dismissal." *See Delong v. United States,* 621 F.2d 618, 623–24 (4th Cir.1980). The Third Circuit extended *Elrod* and *Branti* to demotions, but not until 1987. *See Bennis v. Gable,* 823 F.2d 723, 731 (3d Cir.1987). The Second Circuit, in 1988, stated that it had not "previously considered whether unfavorable patronage actions not rising to the level of a discharge may support a claim under § 1983." *Lieberman v. Reisman,* 857 F.2d 896, 899 (2d Cir.1988). The Sixth Circuit, in 1986, said that whether the *Elrod/Branti* principle extends to hiring presented a question of "first impression."

*Avery v. Jennings,* 786 F.2d 233, 234 (6th Cir.), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986). This circuit, in 1989, tried to resolve the "short-of-discharge" question, noting at that time that the question was novel and difficult. *Agosto–De–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1214–18 (1st Cir.1989). The Supreme Court only recently, in 1990, clarified the law in the area, and, in doing so, it pointed out various conflicting views among the circuits. *See Rutan v. Republican Party of Illinois,* — U.S. —, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (explicitly extending anti-patronage principle to promotion, transfer, recall, and hiring decisions).

Plaintiff's only plausible argument must consist of the claim that the adverse personnel action taken against her in 1985 amounted to a "discharge." That is to say, she must show that it was a "constructive discharge." She then could try to rely upon pre–1985 precedent, in the somewhat related "free speech" context, where this court held that the First Amendment protected a government employee from being *constructively* discharged for having criticized a supervisor. *See Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 118–19 (1st Cir.1977).

■ The problem for plaintiff is that the facts, as she intends to prove them, do not bring her case clearly within the scope of "constructive discharge," as we defined it, namely as "an onerous transfer, *having the purpose and effect of forcing the transferred employee to quit* the employment." *Alicea Rosado,* 562 F.2d at 119 (quoting *Newspaper Guild of Boston v. Boston Herald–Traveler Corp.,* 238 F.2d 471, 472 (1st Cir.1956)). (Emphasis added.)

We assume that plaintiff will show the following:

1) Plaintiff's previous position, the third ranking job in her department, involved developing proper job classifications (*e.g.,* for purposes of pay and benefits) for many of the Authority's 9,000 employees. In her position, she made many important discretionary decisions, she enjoyed

considerable responsibility, and she supervised seven employees.

2) Plaintiff's new position, "job analyst," involved virtually no discretionary decision-making, little if any responsibility, and no supervision of other employees. She, in effect, became one of the seven employees she used to supervise.

3) The new position was one job level below the old one, at level M–V rather than level M–VI. Plaintiff had worked hard for twelve years to rise from level M–V to M–VI.

4) Although there was no direct cut in plaintiff's salary, on at least one occasion she did not receive as large a salary increase as she would have received had she remained in her old position.

5) Plaintiff feared that she would have to retire at level M–V, which would mean lower retirement benefits (though her recovery of her old position in 1988 may have alleviated this fear).

6) When she was demoted, defendant Velez told plaintiff that he needed her office. "Finally," she says, she could not "stand it any longer, and vacated the office and went to sit in a cubicle ... that had an empty desk."

7) Since plaintiff was no longer a supervisor, she lost her parking space.

These facts, taken together and augmented by the pattern of other employee demotions described in plaintiff's affidavits, simply do not show that the defendants had either the "purpose" or the "effect" of forcing plaintiff to quit her employment. Indeed, plaintiff nowhere says in any affidavit that she considered quitting, she nowhere claims that the defendants were trying to force her to quit, and she refers (in all her statements) to the adverse personnel action as a "demotion," not a "discharge." The facts recited show that the action taken against plaintiff was significantly adverse, that it harmed her, and that it may well have been politically motivated. They do not show circumstances that would likely make her quit (her concern about retirement benefits suggests the contrary). Other cases that plaintiff cites, finding a "constructive dis-

charge," involve significantly more egregious circumstances. *See, e.g., Parrett v. City of Connersville,* 737 F.2d 690, 694 (7th Cir.1984), *cert. dismissed,* 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985) (plaintiff, after demotion from position with supervisory responsibilities, was left with no work at all to do, and did in fact quit). *Cf. Alicea Rosado,* 562 F.2d at 119–20 (court remands for further findings where district court found demotion from supervisory position and lengthy extra commuting time and costs).

In sum, applying *Anderson v. Creighton, supra,* we do not see how a district court could find, on the basis of the facts set forth in plaintiff's statement, that her demotion clearly amounted to a "constructive discharge" (as that term was used in 1985). Consequently, defendants enjoy qualified immunity and are entitled to judgment on plaintiff's claim for damages.

The order of the district court is

*Vacated and the case is remanded for proceedings consistent with this opinion.*

TORRUELLA, Circuit Judge
(Dissenting).

In my opinion the record is clear that appellants' actions against appellee were taken for "the purpose and effect of forcing the transferred employee to quit the employment." *Alicea Rosado v. Garcia–Santiago,* 562 F.2d 114, 119 (1st Cir.1977). This circuit's holding in *Alicea Rosado,* which preceded the Supreme Court's decision in *Rutan v. Republican Party of Illinois,* —— U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), by thirteen years, must have clearly signaled to appellants, even in 1985, that their retaliatory actions against appellee because of her political beliefs violated the Constitution of the United States. We should not be too eager to accommodate appellants' disingenuousness in seeking to avoid liability by claiming qualified immunity particularly when we consider the added factor that, if true, appellants' actions would have also constituted clear violations of Commonwealth law. *Clemente v. Dpto. de la Vivienda,* 114 D.P.R. 763 (1983); P.R. Const. art. II, § 1; P.R.

Laws Ann. tit. 3, § 1301 *et seq.*; P.R.Laws Ann. tit. 29, § 146; P.R.Laws Ann. tit. 1, § 13.

I dissent.