Elizabeth ROQUE–RODRIGUEZ,
Plaintiff, Appellee,

v.

Hon. Jose LEMA MOYA, et al.,
Defendants, Appellants.

No. 90–1904.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1991.

Decided Feb. 27, 1991.

Carlos Lugo Fiol, Asst. Sol. Gen., with whom Jorge E. Perez Diaz, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., were on brief, San Juan, P.R., for defendants, appellants.

Francisco R. Gonzalez, with whom Jesus Hernandez Sanchez and Hernandez Sanchez Law Firm, San Juan, P.R., were on brief, for plaintiff, appellee.

Before TORRUELLA and SELYA, Circuit Judges, and POLLAK *, Senior District Judge.

SELYA, Circuit Judge.

This appeal calls upon us to walk a series of tightropes. After having successfully negotiated the hazards of the course, we sustain the interlocutory appeal and set aside the district court's refusal to grant partial summary judgment in defendants' favor.

I

Plaintiff-appellee Elizabeth Roque–Rodriguez (Roque) has taught for many years in the Puerto Rico school system, most recently in the town of Guayama. She is employed by the commonwealth's Department of Education (DOE). Since 1985, Roque has been eligible for promotion to the position of secondary school director. Notwithstanding her eligibility and declared candidacy, she was never interviewed for openings as they arose. She alleges that, during the period from 1985 to early 1989, other candidates with lesser credentials were interviewed and appointed.

A member of the New Progressive Party (NPP), Roque notes that Jose Lema Moya (Lema), head of DOE, Carmen C. Hernandez, Guayama's school superintendent, and Elisamuel Espada Gonzalez (Espada), the director of the school at which Roque taught, were all members of the Popular Democratic Party (PDP); and that, in the 1984 elections, the PDP wrested control of the government from the NPP. Rather than writing off her misfortune in the name of coincidence, Roque attributed what happened to her from 1985 forward as "yet another battle in the drawn-out ["jobs"] war which developed in the aftermath of the November 1984 gubernatorial election in Puerto Rico." See Jusino v. Zayas, 875 F.2d 986, 987 (1st Cir.1989) (listing representative cases). In her view, Lema, Hernandez, and Espada, acting out of political animus, impermissibly deprived her of available promotional opportunities.

By July 1989, plaintiff's patience was exhausted. She brought an action in the federal district court under 42 U.S.C. § 1983 against her three superiors, alleging that, on the basis of her political affiliation, the defendants not only denied her a promotion but also harassed her and threatened to bring unwarranted administrative charges.[1] Postulating that this conduct violated her rights under the first and fourteenth amendments to the federal Constitution, Roque demanded both money damages and an injunction.

In due course, the defendants moved for summary judgment. Their motion was denied by the district court without explanation. They then moved to alter or amend the order, to no avail. This appeal followed.

II

■ Before we set foot on the high wire, we believe it is important to delineate the circumscribed nature of our jurisdiction over this matter. Ordinarily, interlocutory decisions of a federal district court are not immediately appealable. See 28 U.S.C.

---

* Of the Eastern District of Pennsylvania, sitting by designation.

1. While we have no need at this early stage of the proceedings to amplify the charges of harassment, we offer one sampling in order to give the reader the flavor of the controversy. The complaint alleged, inter alia, that Hernandez summoned Roque to her office on 5 June 1989 and ordered Roque to request a transfer she did not want. If Roque failed to do so, administrative charges would be filed against her. At this meeting, Hernandez is alleged to have stated flatly that she "did not like" NPP members. Despite several alleged threats by Hernandez and Espada, however, no administrative proceedings were actually instituted against Roque.

§ 1291 (1982). There are, however, certain recognized exceptions to the "final judgment" rule. One such exception exists where a state actor, by pretrial motion, has unsuccessfully asserted a substantial claim of qualified immunity. The order denying relief is immediately appealable. *See Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985); *Domegan v. Fair*, 859 F.2d 1059, 1061–62 (1st Cir.1988); *Vazquez Rios v. Hernandez Colon*, 819 F.2d 319, 320 (1st Cir.1987).

■ Nevertheless, out of respect for the final judgment rule and the need for orderly management of litigation, "the jurisdiction so conferred is severely restricted." *Domegan*, 859 F.2d at 1061; *see also Cheveras Pacheco v. Rivera Gonzalez*, 809 F.2d 125, 127 (1st Cir.1987). "Notwithstanding that we have jurisdiction to review the denial of qualified immunity midstream, '[a]ny additional claim presented to and rejected by the district court must independently satisfy the collateral-order exception to the final-judgment rule in order for us to address it on an interlocutory appeal.'" *Domegan*, 859 F.2d at 1061–62 (quoting *Bonitz v. Fair*, 804 F.2d 164, 173 (1st Cir. 1986)). Hence, interlocutory review of a qualified immunity order does not in and of itself confer jurisdiction over other contested issues in the case.[2] It is against this backdrop that we pause to consider exactly what it is that this appeal asks us to review.

Plaintiff's complaint was far from a model of clarity. It was not divided into separate counts but contained a golconda of allegations within a single statement of claim. It amounted to a narrative litany of putative abuses, charging harassment, violations of due process, retaliatory failure to promote, and other wrongs in a largely undifferentiated fashion. Appellants' summary judgment motion was considerably better focussed. It sought *brevis* disposition on four grounds: (1) qualified immunity, (2) inappropriateness of equitable relief, (3) the complaint's failure to state an actionable conspiracy claim, and (4) eleventh amendment immunity. Defendants' Motion for Summary Judgment (April 18, 1990) at 1–2, *reprinted in* Record Appendix (R.A.) at 16–17. The qualified immunity prong was tied exclusively to the alleged denial of promotional opportunities; the motion contended that "[d]efendants are entitled to the defense of qualified immunity, because there is no clear established law to promote plaintiff." *Id.* at 1, R.A. at 16.

The district court denied the motion without explanation.[3] Defendants sought reconsideration solely because of the following claimed "error":

> [The district court's] "Order" of August 7, 1990 has denied defendants' motion for summary judgment based, *inter alia,* on the doctrine of qualified immunity. This is clearly an error of law, since for purposes of the doctrine of qualified immunity, th[e] court had to determine whether on [sic] *1985*, plaintiff had a clearly established right under the First Amendment to be promoted and that the failure to promote her violated this clearly established right.

Defendants' Motion to Alter or Amend (August 25, 1990) at 2, *reprinted in* R.A. at 52. The lower court was unmoved. It denied the second motion, pausing only to inter the related issue of eleventh amend-

---

**2.** To date, this circuit has refrained from attempting to exercise "pendent appellate jurisdiction over matters beyond those bound up in the qualified immunity inquiry." *See Morales v. Ramirez*, 906 F.2d 784, 787 n. 2 (1st Cir.1990). There is nothing about the instant case that would dispose us to burst the self-imposed bonds of our preexisting practice.

**3.** Such brevity is permissible. *See Domegan,* 859 F.2d at 1065–66 (district court not required to make findings or state reasons when denying summary judgment motion); *see also* Fed.R. Civ.P. 52(a) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56...."). On the other hand, a bench decision or memorandum which explicates the trial court's thinking will often prove to be of inestimable value to the litigants and to a reviewing court. Such a statement would certainly have been helpful in this instance.

ment immunity.[4]

Because the right to file a *Mitchell*-type interlocutory appeal extends only to the issue of qualified immunity, and because the movants consistently limited their assertion of the defense in the court below to the promotion claim, we must concentrate at this intermediate stage exclusively upon the isthmian question of whether the buckler of qualified immunity shielded appellants from damage liability for scuttling plaintiff's promotional opportunities.

### III

■ Despite this pruning of the record, a threshold issue remains. Appellee has suggested, by motion to dismiss, that defendants' appeal was not timely, and hence, that we lack jurisdiction to entertain it. Before continuing our peregrinations, we address the jurisdictional challenge.

The record documents the following chronology. The district court's order denying defendants' summary judgment motion was dated August 7, 1990, but was not entered on the docket until August 13. On August 27, defendants served their motion to alter or amend the order. They filed the motion the next day. It was denied on September 10. On September 12, defendants filed a notice of appeal directed to the August 7 order. On September 18, after the district court's September 10 order was docketed, the defendants filed a superseding notice of appeal.

■ Based on this sequence, the appeal was timely. Fed.R.App.P. 4(a) provides that in a civil case to which the federal sovereign is not a party, a notice of appeal must be filed within thirty days after the date of entry of the disputed judgment or order. The period so provided is jurisdic-

tional and cannot be waived. *See Browder v. Director, Illinois Department of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560–61, 54 L.Ed.2d 521 (1978). It can be tolled, however, if a motion to alter or amend the judgment is seasonably filed in the district court under the aegis of Fed.R. Civ.P. 59(e). *See* Fed.R.App.P. 4(a)(4). A notice of appeal filed within thirty days of the entry of the order disposing of the Rule 59(e) motion will be considered as timely. *See id.* We think that is the situation here.

■ The date on which an order is entered on the docket, not the date the order is handed down, marks the commencement of the time periods for filing related motions and appeals. *See Beaudry Motor Co. v. Abko Properties, Inc.*, 780 F.2d 751, 754 (9th Cir.), *cert. denied*, 479 U.S. 825, 107 S.Ct. 100, 93 L.Ed.2d 51 (1986); *Yaretsky v. Blum*, 592 F.2d 65, 66 (2d Cir.1979) (per curiam). Therefore, the clock began to run on August 14 with respect to the trial court's denial of summary judgment.[5] Because that denial was immediately appealable insofar as it spurned defendants' claim of qualified immunity, *see Mitchell*, 472 U.S. at 530, 105 S.Ct. at 2817–18, the order became the functional equivalent of a judgment for purposes of appeal. *See* Fed.R. Civ.P. 54(a) ("any order from which an appeal lies" is considered a judgment). Thus, appellants' motion to alter or amend the order, if timeous, came within the purview of Fed.R.Civ.P. 59(e).[6] *Cf., e.g., Financial Services Corp. v. Weindruch*, 764 F.2d 197, 198–99 (7th Cir.1985) (per curiam) (by virtue of Rule 54(a), order granting preliminary injunction is a "judgment" for purposes of Rule 59(e)).

The next question is whether the Rule 59(e) motion was timely, that is, brought

---

**4.** Specifically, the district court pointed out, R.A. at 156, that plaintiff's complaint did not seek money damages against any defendant in his or her official capacity. The appellants have not challenged this observation. Thus, the eleventh amendment is not in play and the only "immunity" defense with which we need be concerned is that of qualified immunity.

**5.** To be sure, the order denying summary judgment was entered on the docket on August 13, 1990. But the Civil Rules specifically provide

that, for computational purposes of this sort, "the day of the act, event, or default from which the designated period of time begins to run shall not be included." Fed.R.Civ.P. 6(a).

**6.** The rule reads in its entirety:

A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

Fed.R.Civ.P. 59(e).

within the Rule's ten day window. The march of time began on Tuesday, August 14. *See supra* p. 106 & note 5. Because intermediate weekends were to be excluded in calculating the period, *see* Fed.R.Civ.P. 6(a) (in computing periods of eleven days or less, intervening weekends or holidays should not be counted), the deadline was Monday, August 27. The defendants served their motion on that day. Inasmuch as the date of service rather than the date of filing governed for this purpose, *see Rivera v. M/T Fossarina,* 840 F.2d 152, 154 (1st Cir.1988) ("timeliness of a motion to alter or amend a judgment is determined by the date it is *served,* not by the date it is filed"), the Rule 59(e) motion was seasonable.

The remnants of the jurisdictional tangram fall easily into place. The timely filing of the Rule 59(e) motion stayed the period for filing an appeal from the August 7 order. *See* Fed.R.App.P. 4(a)(4). The clock did not begin to tick afresh until September 13, 1990, when the district court's disposition of the motion to alter or amend was entered on the docket. Defendants thus had until October 15, more or less, to file their new notice of appeal. *See* Fed.R.App.P. 26(a) (computation instructions). In fact, they filed the notice now before us on September 18, thereby clearing the temporal hurdle with room to spare. Insofar as this appeal seeks *Mitchell*-type review, we have appellate jurisdiction. Thus, we turn to the immunity issue.

## IV

██ The doctrine of qualified immunity insulates government actors, exercising discretionary powers, from liability for civil damages insofar as their conduct does not abridge clearly established rights, statutory or constitutional, about which a reasonably prudent official should have been aware. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). We recently described the judicial search for such rights in the following way:

The qualified immunity inquiry logically begins with identification of the right at issue and proceeds to place that right in historical perspective. If the right allegedly violated was "clearly established" when the challenged conduct took place, then the defendants should reasonably have been cognizant of it. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. In this context, the phrase "clearly established" has a special definition: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

*Amsden v. Moran,* 904 F.2d 748, 752 (1st Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). When, as here, the question of qualified immunity surfaces in respect to the district court's granting or denial of summary judgment, appellate review is plenary. *Id.*

We emphasize that the issue is time-sensitive. Even if government actors actually violated a plaintiff's rights, there is still a safety net; they warrant immunity so long as the right in question was not "clearly established" when the interdicted actions occurred. Thus, "a plaintiff who is entitled to prevail on the merits is not necessarily entitled to prevail on the issue of qualified immunity." *Collins v. Marina–Martinez,* 894 F.2d 474, 478 (1st Cir.1990). With this brief preface, we assay the situation at hand.

██ It is now clearly established that, except in situations where political orientation may be a constitutionally appropriate criterion for the vacant position, an official's refusal to promote a career public employee on the basis of that employee's political affiliation is a violation of the first amendment. *Rutan v. Republican Party of Illinois,* — U.S. —, 110 S.Ct. 2729, 2737, 111 L.Ed.2d 52 (1990) (explicitly extending anti-patronage principle to, *inter alia,* promotion, transfer, and hiring decisions). Yet, despite this linear explication of constitutional rights, the qualified immunity tightrope has a myriad of temporal

twists and turns. *Rutan* was decided in June 1990, well after Roque filed suit and, by definition, well after the defendants denied her the promotion which she said she deserved. And prior thereto, the law, far from being "clearly established," was in a muddle.

To be sure, the Supreme Court had ruled that, except in regard to jobs where political affiliation was an appropriate benchmark, the federal Constitution forbad the *firing* of public employees for partisan political reasons. *See Branti v. Finkel*, 445 U.S. 507, 516–17, 100 S.Ct. 1287, 1293–94, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976). Beyond that, however, the Court offered little guidance and the lower federal courts were in considerable disarray. *Compare, e.g., Delong v. United States*, 621 F.2d 618, 623–24 (4th Cir.1980) (refusing to extend *Elrod/Branti* doctrine to employment actions which were not the "substantial equivalent" of firings) *with, e.g., Bennis v. Gable*, 823 F.2d 723, 731 (3d Cir.1987) (applying *Elrod/Branti* doctrine to demotions). The uncertainties that pervaded the issue were not resolved, even in general terms, until after this suit was started. *See Rutan*, — U.S. —, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Agosto–De–Feliciano v. Aponte–Roque*, 889 F.2d 1209, 1214–18 (1st Cir.1989) (en banc) (decided December 8, 1989). Indeed, in *Agosto–De–Feliciano*, we lamented that issues of "whether and under what circumstances public employer action short of dismissal, adversely affecting a career employee, based solely on the latter's political affiliation, should be held to violate the First Amendment" had been resolved by the several circuits, up to December 1989, "in widely diverging manners." *Id.* at 1214. In sum, when the present plaintiff sued in July 1989, "the law was unclear about the extent to which the Constitution protected career personnel against politically motivated adverse personnel actions that did not rise to the level of a discharge." *Nunez–Soto v. Alvarado*, 918 F.2d 1029, 1030 (1st Cir.1990) (emphasis omitted).

We believe that *Nunez–Soto* is controlling here. In that case, Nunez-Soto, a career employee of a government agency, contended that the defendants, government officials, demoted her in 1985 to a lesser (but equally compensated) position for reasons related solely to her political connections. The district court, on motion for summary judgment, refused to grant the officials the benefit of qualified immunity. In the ensuing interlocutory appeal, we reversed, ruling that before *Agosto–De–Feliciano* and *Rutan* were decided, it was not clear that the federal Constitution barred a politically motivated demotion of a career civil servant. *Nunez–Soto*, 918 F.2d at 1030. Hence, the defendants were immune from damage liability. *Id.* at 1031.

The case at bar, like Nunez-Soto's case, involves conduct which transpired before the decisional law coalesced. Moreover, the adverse employment action involved here is less obnoxious than its counterpart in *Nunez–Soto*. After all, demoting a person from a job she has held and performed creditably seems more demeaning and disruptive than leaving an employee *in situ*, letting her retain the job she has but refusing (unfairly, we will assume) to consider her for a better one. If it was unclear in the 1985–1989 time frame that the Constitution prohibited politically motivated *demotions*, the unconstitutionality of withholding *promotions* on account of politics was, *a fortiori*, even more unclear.

In short, the reasoning of *Nunez–Soto* compels a similar outcome in the case at bar. And, we are not at liberty to reject that reasoning. Important considerations of stability and equality of treatment counsel that, absent special circumstances not present here, each panel within a multi-panel circuit should follow prior circuit precedent closely in point. *See Kotler v. American Tobacco Co.*, 926 F.2d 1217, 1223 (1st Cir.1990) ("panels of this circuit are bound by the decisions of prior panels unless there is supervening authority compelling a contrary result"); *Jusino*, 875 F.2d at 993 (1st Cir.1989) (citing other First Circuit cases). Following *Nunez–Soto*, we hold that, because Roque's right to be considered for promotion without regard to her political affiliation was not clearly es-

tablished as a matter of federal constitutional law at the time of the challenged conduct, the defendants were entitled to qualified immunity on the failure-to-promote claim.[7]

## V

Our exercise in funambulism draws to a close. For the reasons stated, we reach solid ground in ruling that the defendants were entitled to immunity from civil damages in respect to the failure-to-promote claim. As to that aspect of the case, their motion for summary judgment was incorrectly denied. But, we need go no further. Because the qualified immunity/failure to promote interconnection comprised the only issue properly preserved and presented by this interlocutory appeal, we take no view of the other issues which presumably remain in the case, including, without limiting the foregoing generality, plaintiff's harassment claims, her due process claim, her asserted entitlement to equitable relief on any of several theories, and her attempt to win damages from the defendants with respect to claims apart from the failure-to-promote claim.

*The order denying appellants' motion for summary judgment is vacated and the cause remanded for entry of an amended order and for further proceedings consistent with this opinion. Costs to appellants.*

TORRUELLA, Circuit Judge (dissenting).

For the reasons expressed in my dissent in *Núñez–Soto v. Alvarado*, 918 F.2d 1029 (1st Cir.1990) (Torruella, J., dissenting), I am forced to reach a different conclusion than my colleagues in this case. I respectfully dissent.

---

**7.** Insofar as we can tell from the record, the plaintiff is still employed as a teacher at Guayama. She has not suggested in her complaint, her appellate brief, or otherwise, that defendants' conduct toward her amounted to a "constructive discharge." Hence, we need not explore today the interrelation between that theory and our earlier precedent. *See, e.g., Nunez–Soto,* 918 F.2d at 1030–31; *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 118–19 (1st Cir. 1977).