UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-1418

DIGNA SERRANO-CRUZ, HECTOR IRIZARRY,
AND THE CONJUGAL SOCIETY COMPRISED BETWEEN THEM,

Plaintiffs - Appellants,

v.

DFI PUERTO RICO, INC., ET AL.,

Defendants - Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. P rez-Gim nez, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Campbell, Senior Circuit Judge, 

and DiClerico,* District Judge. 



Javier A. Morales-Ramos for appellants. 
Vicente J. Antonetti, with whom Ilsa Y. Figueroa-Ar s and 
Goldman Antonetti & C rdova were on brief for appellees. 



March 19, 1997


 

* Of the District of New Hampshire, sitting by designation.

TORRUELLA, Chief Judge. Plaintiff-appellant Digna TORRUELLA, Chief Judge.  

Serrano-Cruz ("Serrano") formally resigned from her job with

defendant-appellee DFI Puerto Rico, Inc. ("DFI") on August 22,

1994. Four months later, she and her husband filed suit under

the Age Discrimination in Employment Act of 1967 ("ADEA"), as

amended, 29 U.S.C.A. 621-634 (1985 & Supp. 1996), claiming

damages resulting from allegedly discriminatory, adverse

employment actions resulting in her constructive dismissal. She

and her husband now appeal the district court's grant of summary

judgment for her employer, DFI. We affirm, finding that Serrano

failed to establish a prima facie case under the ADEA.

BACKGROUND BACKGROUND

In the summary judgment context we relate all material

facts in genuine dispute in the light most favorable to the party

resisting summary judgment, here Serrano. S nchez v. Alvarado, 

101 F.3d 223, 225 n.1 (1st Cir. 1996). Serrano worked for DFI's

predecessor firm, Aeroboutiques, from 1984 until it was purchased

by DFI in September 1992. Aeroboutiques, and later DFI, owned

and operated several stores selling gifts and other consumer

merchandise at Luis Mu oz Mar n International Airport in San

Juan. At the time of the change in ownership, Serrano served as

the "assistant general manager" of Aeroboutiques, and, in that

position, assisted the general manager, supervised the operation

of the airport stores, oversaw their physical upkeep (e.g.,

lighting, cleanliness) and their security systems, and performed

-2-

some accounting functions.1 When DFI took over the stores,

Serrano was offered, and accepted, the position of

"comptroller."2 As comptroller Serrano continued to perform her

previous managerial duties, with regular duties including:

maintaining the security system for the airport stores,

supervising store employees and arranging employee vacation time,

having responsibility for the keys to the stores, and attending

security and employee management meetings. In addition, she

assumed accounting responsibilities such as preparing quarterly

reports and keeping the payroll accounts.

The events giving rise to her suit began in February

1994, when the general manager (Manny Lozano) and the president

(Luis Bared) of DFI, Serrano's superiors, began reducing her

responsibilities. She lost managerial control over the security

system for the stores, as well as control over the keys.

Serrano's role in personnel selection was also decreased, and she

was excluded from meetings she had previously attended. 

Through a letter to Serrano dated June 21, 1994, Luis

Bared indicated that Serrano was on a 90-day probation period

effective that day. The letter cited DFI's dissatisfaction with

Serrano's "negligent" handling of certain rent payments for the

 

1 Prior to being assistant general manager, Serrano had occupied
the position of "comptroller" at Aeroboutiques, in which she was
responsible for all of the accounting functions of the company as
well as for general supervision. When she became assistant
general manager, her accounting responsibilities were reduced. 

2 The record contains inconsistent references to this position
as either "comptroller" or "controller." 

-3-

airport stores. Bared indicated that during the 90-day period,

he and Manny Lozano would be evaluating her performance as

comptroller. Serrano denies that she made mistakes in the course

of discharging her accounting duties as comptroller. 

On July 18, 1994, before the 90-day probation period

had ended, Lozano informed Serrano that DFI had decided to

transfer her to a newly created position entitled "retail

manager." Serrano refused the new position, stating that being

fired would be preferable to the new position. In a letter to

Serrano dated July 21, 1994, Lozano stated that Serrano would

receive the same salary and benefits in the new position as she

had received as comptroller, and that she would be given two days

of paid leave to reconsider her decision to turn down the

position. Lozano's July 21 letter further states that, as retail

manager, Serrano "would supervise and be responsible for the

retail operation of our San Juan International Airport stores."

After taking a month of leave, Serrano formally resigned from DFI

on August 22, 1994, and now claims she was forced to resign by

DFI's unacceptable job transfer.

Serrano was 53 at the time her suit was initiated in

December 1994. There is no direct evidence that DFI's actions

were taken because of Serrano's age. Appellant alleges a few

facts that might suggest discriminatory animus on the basis of

her age. These are: that she was replaced by a woman aged 25

with roughly the same qualifications and with less experience;

that she was treated differently from younger employees by DFI

-4-

management by not receiving free lipstick samples and not being

thrown a birthday party.

The district court granted DFI's summary judgment

motion, ruling that Serrano failed to establish constructive

dismissal as part of her prima facie case of age discrimination

because she did not show that there was a problem with the new

position that would compel a reasonable person to resign. Before

us on appeal is Serrano's ADEA claim against DFI, her state law

claims having been dismissed without prejudice.

STANDARD OF REVIEW STANDARD OF REVIEW

We review the district court's grant of summary

judgment de novo. Mulero-Rodr guez v. Ponte, 98 F.3d 670, 672 

(1st Cir. 1996). Summary judgment is properly granted where "the

pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, if any, show that

there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c). 

Under Rule 56, once the moving party has pointed to the

absence of adequate evidence supporting its opponent's case, the

onus is on the party resisting the motion for summary judgment to

respond by presenting facts that show that there is a "genuine

issue for trial." LeBlanc v. Great American Ins. Co., 6 F.3d 

836, 841-42 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, 

Inc., 477 U.S. 242, 256 (1986)). To oppose the motion 

successfully, the nonmoving party "may not rest upon mere

-5-

allegations or denials of his pleading." Anderson, 477 U.S. at 

256. "The nonmoving party must establish a trial-worthy issue by

presenting 'enough competent evidence to enable a finding

favorable to the nonmoving party.'" LeBlanc, 6 F.3d at 842 

(quoting Anderson, 477 U.S. at 249). 

DISCUSSION DISCUSSION

The ADEA makes it unlawful for an employer to

"discharge any individual or otherwise discriminate against any

individual with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's age."

29 U.S.C.A. 623(a)(1) (1985). In a wrongful discharge case

under the ADEA, the plaintiff bears the ultimate burden of

proving that "he would not have been fired but for his age."

Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 

1988). Where, as here, there is no direct evidence showing that

the employer's actions were motivated by age, the familiar

McDonnell Douglas framework governs. See McDonnell Douglas Corp. 

v. Green, 411 U.S. 792, 802-05 (1973); Greenberg v. Union Camp 

Corp., 48 F.3d 22, 26-27 (1st Cir. 1995). Under the McDonnell 

Douglas framework, the employee must initially come forward with 

sufficient evidence to establish a prima facie case of age 

discrimination. Here, Serrano needed to establish that: (i) she

is over forty years of age; (ii) her job performance was

sufficient to meet DFI's legitimate job expectations; (iii) she

was constructively discharged; and (iv) DFI sought a replacement

with roughly similar skills or qualifications. Greenberg, 48 

-6-

F.3d at 26. Once the plaintiff has met this modest burden, a

presumption of discrimination arises that shifts the onus to the

employer to come forward with a legitimate, nondiscriminatory

reason for its actions. Id. If the employer does so, the 

presumption of age discrimination vanishes and the burden shifts

back to the plaintiff to show that the employer's justification

is pretextual. The burden of persuasion, as opposed to the

burden of production, rests with the plaintiff throughout.

The district court found that although there may exist

a factual dispute between the parties as to whether Serrano met

DFI's legitimate job expectations (the second prong of McDonnell 

Douglas), or indeed as to whether DFI's reasons for reducing 

Serrano's duties or transferring her job were pretexts for

improper age discrimination, Serrano failed to establish a prima

facie case because, on undisputed facts, she did not establish

constructive dismissal (prong three). On appeal Serrano contends

that there is a triable issue as to constructive dismissal,

making summary judgment improper, and also contends that a

finding of "adverse employment actions" may provide grounds for

relief even if a finding of constructive dismissal is not

supported by the record. We assess each argument in turn.

I. Constructive Dismissal I. Constructive Dismissal

We must consider de novo whether, as a matter of law, 

Serrano failed to make a prima facie showing of constructive

discharge. We have long applied an "objective standard" in

determining whether an employer's actions have forced an employee

-7-

to resign. See, e.g., Calhoun v. Acme Cleveland Corp., 798 F.2d 

559, 561 (1st Cir. 1986). For the transfer proposed by DFI to be

deemed a constructive discharge, "'the trier of fact must be

satisfied that the new working conditions would have been so

difficult or unpleasant that a reasonable person in the

employee's shoes would have felt compelled to resign.'" Id. 

(quoting Alicea Rosado v. Garc a Santiago, 562 F.2d 114, 119 (1st 

Cir. 1977)). An employee may not, therefore, be unreasonably

sensitive to a change in job responsibilities. 

It is undisputed that Serrano, when offered the

position of "retail manager," was promised the same salary and

benefits she enjoyed as comptroller. Salary considerations are

important in determining whether a job transfer can support a

claim of constructive dismissal. See Greenberg, 48 F.3d at 27 

(noting no change in salary in course of finding no constructive

dismissal) (collecting cases); Stephens v. C.I.T. Group, 955 

F.2d 1023, 1027 (5th Cir. 1992) (noting reduction of salary in

course of finding constructive dismissal); Pe a v. Brattleboro 

Retreat, 702 F.2d 322 (2d Cir. 1983) (finding no constructive 

discharge where job responsibilities were changed without any

reduction in pay); cf. N ez-Soto v. Alvarado, 918 F.2d 1029, 

1030-31 (1st Cir. 1990) (in political demotion case, demotion

without salary cut found insufficient for constructive

dismissal). Although important, the fact that salary and

benefits have not been decreased has never been held to be a

conclusive factor; courts applying the objective standard in

-8-

ADEA constructive dismissal cases consider a variety of often

case-specific factors. See Greenberg, 48 F.3d at 27-29 

(discussing salary in addition to assessing new work conditions);

Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360-62 (2d Cir. 1993) 

(noting no decrease in salary, but focusing mainly on working

conditions); see also Flaherty v. Gas Research Inst., 31 F.3d 

451, 457 (7th Cir. 1994) ("[A]n employer does not insulate itself

from liability for discrimination simply by offering a transfer

at the same salary and benefits."). Common sense suggests that a

job transfer without a reduction in salary and benefits may,

under certain circumstances, be unacceptable to a reasonable

person who is overqualified and humiliated by an extreme

demotion, or underqualified and essentially "set up to fail" in a

new position. With this in mind, we turn to Serrano's situation.

In the present case, the fact that after her transfer

Serrano would remain the second highest salaried employee in

DFI's airport organization takes on great importance, for the

simple reason that this is one of few concrete facts we have

regarding the position that she was offered. Serrano, by not

trying out, or finding out more about, the newly created

position, cannot possibly muster proof that, in the course of a

trial, could lead a jury to find that the newly created position

-9-

would compel a reasonable person with her background to refuse

the offer and resign.3 

The precise contours of the new position, which appears

to have been created for Serrano, are unclear. In view of

Lozano's characterization of the new position, in his July 21,

1994 letter to Serrano, as one in which Serrano "would supervise

and be responsible for the retail operation of our San Juan

International Airport stores," it is impossible to conclude that

the position would compel a reasonable person in Serrano's shoes

to quit. Based on Serrano's own sworn statements, she had held

general supervisory duties over the stores for Aeroboutiques

(DFI's predecessor), and continued to hold supervisory

responsibilities while also assuming accounting responsibilities

in her position as comptroller for DFI. Serrano considers the

move from comptroller to "retail manager" to be a devastating

change in status, but cannot point to specific problems that

would arise, other than the fact that she is unqualified to
 

3 Appellant's basic contention regarding the new position --
that it involved sales tasks she was not qualified or experienced
enough to carry out -- rests on bare allegations that simply
cannot be verified, because the position of "retail manager" did
not exist before it was specially created for Serrano. It also
follows that plaintiff's argument that the district court erred
by not determining the exact nature of her duties as comptroller
are misdirected. No additional precision regarding the nature of
her position as comptroller could help her, in view of the lack
of evidence regarding her proposed position. Moreover, Serrano's
background included a broad variety of managerial tasks besides
strictly financial ones, having served previously as assistant
general manager as well as comptroller. When we do consider
Serrano's description of her duties, we find that the fluid
nature of managerial responsibilities in DFI's organization only
makes speculation about the position of "retail manager" more
unreliable.

-10-

"push" merchandise. She cannot prove, however, that the newly

created position of "retail manager" would involve a sufficient

amount of daily, hands-on sales work to compel a reasonable

person in Serrano's position to resign. Serrano's constructive

discharge claim, therefore, rests on speculations regarding the

new position, as well as on her sworn statements to the effect

that supervising retail sales would harm her dignity. Loss of

prestige in a job transfer, standing alone, cannot support a

finding of constructive discharge. See Alicea Rosado, 562 F.2d 

at 119-20 ("[A] limited blow to one's pride or prestige does not

provide reason enough to resign during whatever period may be

required to seek judicial relief."). 

Of course we cannot state with absolute certainty that

the position offered to Serrano would not have turned out to be

strongly objectionable to a reasonable person, as Serrano

suggests. But, in the summary judgment context, we need not do

so. The decisive consideration here is that, by not accepting

the newly created and ambiguous position, Serrano foreclosed the

possibility of presenting concrete evidence, rather than mere

assertions, to a jury regarding the nature of her new working

conditions. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 

257 (to oppose summary judgment motion, plaintiff cannot rely on

assertions in pleadings and must come forward with evidence that

a jury could consider). We have long expected that those who

seek to initiate ADEA claims will do so while still employed, and

the instant case reminds us of the wisdom of this expectation.

-11-

See, e.g., Cazzola v. Codman & Shurtleff, Inc., 751 F.2d 53, 55 

(1st Cir. 1984) ("Even the victim of unlawful discrimination is

expected to seek legal redress while still employed unless

actually fired, or constructively discharged due to a 'drastic

reduction in the quality of working conditions.'" (quoting Alicea 

Rosado, 562 F.2d at 119-20)). Here, with no evidence of a 

drastic reduction in work conditions sufficient to support

Serrano's resignation, summary judgment is appropriate.

Moreover, other factual circumstances tending to

strengthen a case for constructive dismissal were not present

here. There was no evidence, for example, of suggestions by the

management of DFI that Serrano take an early retirement.4 Cf. 

Calhoun, 798 F.2d at 564 (jury's finding of constructive 

discharge bolstered by evidence of repeated inquiries regarding

early retirement). There was also very little in the way of

evidence showing animosity toward Serrano on account of her age.5

Cf. Greenberg, 48 F.3d at 28 (finding of no constructive 

 

4 Serrano's contention that DFI's grant of a 48-hour period to
reconsider the offered job transfer -- one that she had already
turned down -- was a "humiliating action" designed to lead her to
resign is very difficult to accept. The July 21, 1994 letter
from Lozano to Serrano which describes the 48-hour
reconsideration period also states, "I want to make it absolutely
clear to you that no one in the Company (DFI Puerto Rico, Inc.)
intends or desires to fire you as an employee of DFI."

5 On appeal, Serrano places great emphasis on the assertion that
she was replaced, in her capacity as comptroller, by a younger
woman. Assuming this is correct, she does not contend that this
occurred prior to her resignation. Therefore, while this fact
may be related to issues of pretext, it is unrelated to our
finding that Serrano fails to satisfy the third (constructive
discharge) part of the McDonnell Douglas prima facie case. 

-12-

discharge "buttressed by the fact that [the employee] couples

his allegation of constructive discharge with virtually no

evidence that [the employer's] motives stemmed from an animosity

towards age."). All of these considerations lead us to the

conclusion that the district court properly found that Serrano

failed to establish a prima facie case. 

II. Adverse Employment Actions II. Adverse Employment Actions

Serrano contends that the district court erred by

failing to consider whether she had established a prima facie

case of "adverse employment actions," as distinguished from the

issue of constructive dismissal. Based on the recitation of

damages in Serrano's amended complaint, however, her suit is

plainly one seeking a remedy for improper dismissal, and not one

seeking a remedy for adverse employment actions. Her allegations

regarding damages consist of the following: lost income and

benefits from the date she was forced to resign, and various

other damages she and her husband have incurred arising out of

the economic hardship brought about by her dismissal. All of

Serrano's alleged economic harms would not have come about had

Serrano accepted the position, which offered the same salary and

benefits. See Shealy v. Winston, 929 F.2d 1009, 1012 n.2 (4th 

Cir. 1991) (finding no constructive discharge and holding there

is no further ground for relief on theory of adverse employment

action, because "appellant would then face the barrier of proving

any damages when he clearly would have been employed . . . at the

same salary and benefits."). For example, the removal of various

-13-

responsibilities from Serrano in the months preceding the

proposed transfer, if they are seen as separable from her

resignation, cannot, even if proven to be discriminatory, support

this suit for lost income and benefits. Given the way Serrano

has framed this lawsuit, relief cannot stem from a finding that

the actions of DFI, short of leading to her dismissal, were

discriminatory adverse employment actions.6

CONCLUSION CONCLUSION

For the reasons stated in this opinion, the district

court's grant of summary judgment is affirmed. 

 

6 In fact, for substantially the reasons discussed with regard
to constructive dismissal, Serrano fails to establish a prima
facie case under the ADEA of adverse employment action on the
basis of the proposed job transfer. See Flaherty, 31 F.3d at 
457; Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 135- 
36 (7th Cir. 1993) (finding failure to make prima facie case of
adverse employment action where employee, claiming adverse change
in job responsibilities, did not accept transfer position at same
salary and therefore could not substantiate claims about that
position).

-14-