**Roger A. LONG; Ronald Ray Smith; and Disabled Rights Action Committee, a Utah nonprofit corporation, Plaintiffs–Appellants–Cross–Appellees,**

v.

**COAST RESORTS, INC., a Nevada corporation; Coast Hotels And Casinos, Inc., a Nevada corporation; Coast West, Inc., a Nevada corporation, Defendants–Appellees–Cross–Appellants.**

**Nos. 99–16468, 99–16497.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 2000

Filed Oct. 3, 2001

Richard F. Armknecht (argued), III, Salt Lake City, Utah, for the plaintiffs-appellants/cross-appellees.

Barry Lieberman (argued), Las Vegas, Nevada, for the defendants-appellees/cross-appellants.

Thomas E. Chandler (argued), Timothy J. Moran and Jessica Dunsay Silver, Civil Rights Division, Department of Justice, Washington, D.C., for amicus curiae United States of America.

Before: KOZINSKI, HAWKINS, and BERZON, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

This appeal arises out of a suit brought by two disabled individuals and a non-profit disabled rights advocacy organization against the Orleans Hotel and Casino in Las Vegas, Nevada ("the Orleans"), which is owned and operated by the appellees. The suit, which was disposed of by the magistrate judge through summary judgment, alleged several areas of non-compliance with the Americans with Disabilities Act ("ADA"). Appellants challenge the adverse summary judgment of several of the allegations of non-compliance, argue that their Nevada state law damages claim should have survived summary judgment, and ask for a recalculation of attorney's fees. The Orleans cross-appeals the one instance of non-compliance found by the magistrate judge and argues that appellants' appeal is not timely.

## FACTS AND PROCEDURAL HISTORY

This suit was brought under the ADA's enforcement provision, 42 U.S.C. § 12188(a), which incorporates the remedies and procedures set forth in the Civil

Rights Act of 1964.[1] After a visit to the Orleans in the fall of 1997, the plaintiffs brought suit citing several ADA Accessibility Guidelines ("Guidelines")[2] and alleging five areas of non-compliance: (1) 819 of the 839 hotel rooms had bathroom doorways with a clear opening smaller than the thirty-two inches required by the Guidelines; (2) two of the four slot change kiosks[3] in the casino did not have accessible service counters; (3) the employee work areas at the four change kiosks were elevated and inaccessible to wheelchairs; (4) two of the three casino bars did not have accessible bar counters or table seating; and (5) three of the nine pool cabanas were not located on a wheelchair accessible route.[4] The complaint sought declaratory judgment, injunctive relief, and litigation expenses under the ADA and damages under Nevada Revised Statutes § 651.070 ("Nevada ADA"). The parties stipulated to all facts relevant to summary judgment and this appeal.

The Orleans moved for summary judgment and the plaintiffs cross-moved for partial summary judgment. Following a hearing, the magistrate judge entered judgment granting in part and denying in part both motions. On issues relevant to this appeal, the magistrate judge found that: (1) plaintiffs had not shown injury sufficient to continue with their damages claim under the Nevada ADA; (2) while the bathroom door width was a "technical violation" of the Guidelines, there had been "substantial compliance with the spirit of the law" and therefore no injunctive relief was merited; (3) wheelchair users were not denied "full and fair enjoyment" of the facilities merely because three of the nine pool cabanas were inaccessible; (4) the two inaccessible bars in the "pit" area were in violation of the ADA; and (5) the slot change kiosks were not in violation because supervisors were not required to enter the kiosks. We have jurisdiction under 28 U.S.C. § 1291.

## ANALYSIS

### I. Timeliness of the Appeal

■ The magistrate judge entered an "order and judgment" on December 31, 1998. An amendment in the form of a separate judgment correcting a few typographical errors was entered January 12, 1999. The Orleans contends that the relevant date of judgment is the former; appellants contend it is the latter. The issue is critical because appellants filed a Motion for Clarification on January 26, which would be timely only under the later date

1. The Civil Rights Act of 1964 contains a citizen suit provision at 42 U.S.C. § 2000a–3(a):

   Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a–2 of this title, a civil action for preventative relief, including an application for permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved. . . .

2. The Guidelines are created by the United States Department of Justice ("DOJ"). At 42 U.S.C. § 12186(b), Congress directs DOJ to "[issue] regulations . . . that include standards applicable to facilities" covered by the ADA. The implementing regulations were issued on July 26, 1991, and include architectural standards for newly constructed public accommodations and commercial facilities entitled the Standards for Accessible Design, found at 28 C.F.R. Part 36. The Guidelines are specific design standards listed in Appendix A of the Standards for Accessible Design. *Id.*

3. The slot change kiosks make change for patrons in the slot machine area of the Orleans.

4. The complaint contained other alleged violations. These alleged violations were dropped from the case after they were remedied by the Orleans.

of judgment. Fed. R.App. P. 4(a)(4)(iii—iv) (party has ten days after judgment, excluding legal holidays and weekends, to file a Rule 59 motion and toll the appeals clock).

Federal Rule of Civil Procedure 58 requires that "[e]very judgment shall be set forth on a separate document." Our case law requires a mechanical application of Rule 58 so as to avoid the inequity of a party being denied the opportunity to appeal because of a failure to realize which of several documents or docket entries constituted "entry" of judgment. *See Beaudry Motor Co. v. Abko Props., Inc.,* 780 F.2d 751 (9th Cir.1986). Thus, we held in *Paddack v. Morris,* 783 F.2d 844, 846 (9th Cir.1986), that Rule 58's separate judgment requirement was not satisfied by a district court's seven-page order detailing facts and legal analysis, but instead only by its subsequent filing of a five-line judgment. Here, the "order and judgment" entered on December 31, 1998 was not a final judgment because it did not constitute separate entry of judgment, but rather contained facts and legal analysis. The district court entered its final judgment on January 12, 1999, when it issued a judgment on a separate document. Thus, this appeal was timely filed.

## II. Bathroom Door Width

Guideline 9.4 requires that: "Doors and doorways designed to allow passage into and within all sleeping units or other covered units shall comply with [Guideline] 4.13.5." Guideline 4.13.5 requires that such doorways have a minimum opening of thirty-two inches. It is undisputed that the doorway between the sink area (which is open to the bedroom area) and the room containing the toilet and bathtub/shower is only twenty-eight inches wide in the 819 "standard" rooms at the Orleans. The Orleans puts forward two arguments justifying non-compliance.

### A. Applicability of Guideline 9.4

■ First, the Orleans contends that Guideline 9.4 does not apply to bathroom doors because the bathroom is not part of the "sleeping unit." To support this contention, the Orleans points out that Guideline 9.2, which addresses requirements for accessible units, distinguishes sleeping rooms from bathrooms. The Orleans argues that the explicit inclusion of bathrooms in 9.2 leads to a presumption that the lack of an explicit reference to bathrooms in 9.4 means that Congress intended to exclude bathrooms from 9.4 altogether. The Orleans's construction of Guideline 9.4 fails to comport with the language of the Guideline itself or the legislative history.

The Orleans's construction of Guideline 9.4 is illogical and would render some of the Guideline's language inoperative. The term "sleeping unit," when used in connection with a hotel, implies the entirety of the individual hotel guest unit—the bedroom, bathroom, and other private spaces occupied exclusively by a guest. The fact that Guideline 9.4 refers to doors "within" sleeping "units" rather than "within" sleeping "rooms" signals that all facilities connected to the sleeping room are covered. In other words, a sleeping "unit" is larger than a sleeping "room," not, as the Orleans suggests, smaller.

Even if "sleeping unit" does refer to just the sleeping area, Guideline 9.4 would still cover the bathroom door: the door from the bedroom to the bathroom is, indisputably, a door "into" the sleeping area from the bathroom, just as the door from the hall is a door "into" the sleeping area. Although here there is a second door within the bathroom, it defies logic to think that the intent was to allow hotels to ren-

der the bedroom inaccessible from part of a guest's bathroom; the more sensible conclusion is that both the bathroom doors are doors "into" the bedroom from the toilet area, since one has to go through both to get to the bedroom.

Finally, the regulators who wrote Guideline 9.4 had specific guidance on the accessibility of hotel bathrooms from Congress' deliberations on the statute. The congressional reports accompanying passage of the ADA made it clear that "all doors and doorways designed to allow passage into and within *all hotel rooms and bathrooms* [are required] to be sufficiently wide to allow passage by individuals who use wheelchairs...." H.R.Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 118 (1990), U.S.Code Cong. & Admin.News 1990 at 303, 401; S.Rep. No. 116, 101st Cong., 1st Sess. 70 (1989) (emphasis added).

Thus, the magistrate judge correctly ruled that Guideline 9.4 applies to the interior bathrooms at the Orleans and was violated.

## B. No Substantial Compliance or Undue Burden Exception

Though the magistrate judge found that Guideline 9.4 applies to the bathroom doors, he nonetheless declined to order injunctive relief because "[w]hile this may be a technical violation of the language of the Guidelines, the Court finds there has been substantial compliance with the spirit of the law. Considering the enormous expense required to modify the structure, and the near absence of hardship and that constituting a minimal inconvenience to wheelchair users, this Court is loathe [sic] to grant injunctive relief to Plaintiffs on this issue."

■ The magistrate judge's ruling was in error. In enacting the ADA, Congress adopted two distinct systems for regulating building accessibility: one to apply to existing facilities (those designed and constructed for occupancy before January 26, 1993) and another to apply to later-constructed facilities. 42 U.S.C. §§ 12183(a)(1) and 12182(b)(2)(A)(iv). The grandfathered facilities must remove barriers to accessibility only to the extent that such removal is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

In contrast to grandfathered facilities, the ADA requires that newly constructed facilities be "readily accessible and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(1). We need not decide whether the ADA forecloses the possibility that a court might exercise its equitable discretion in fashioning relief for violations of § 12183(a), *see e.g., Tenn. Valley Auth. v. Hill,* 437 U.S. 153, 174, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), because there is no room for discretion here even if it exists. This violation resulted in the very discrimination the statute seeks to prevent: it denied individuals with disabilities access to public accommodations. Moreover, the only statutory defense for noncompliance—structural impracticability—does not apply to the Orleans because the terrain on which it is constructed has no unique characteristics which would make accessibility unusually difficult to achieve. *See* 42 U.S.C. § 12183(a)(1). Thus, we reverse the magistrate's determination that, because the Orleans demonstrated obedience to the spirit of the ADA, plaintiffs were not entitled to injunctive relief. The issue is remanded to the magistrate judge for entry of an injunction ordering that the bathroom doors be brought into compliance with Guideline 9.4.

## III. The Pool Cabanas

The swimming pool area at the Orleans has nine pool cabanas, five large and four

small. Of these, three large and three small ones are located on an accessible route. The accessible cabanas are just as close to the pool as the non-accessible cabanas.

■ Not surprisingly, the Guidelines do not contain specific accessibility requirements ("scoping requirements") for pool cabanas. Where there are no scoping requirements for a particular type of facility, "then a reasonable number, but at least one, must be accessible." *ADA Title III Technical Assistance Manual III—5.300.* Placing six of the nine pool cabanas on an accessible route is reasonable and complies with the ADA. The magistrate judge's decision on this issue is affirmed.

## IV. Employee Work Areas in the Slot Change Kiosks

■ The ADA's citizen suit provision allows civil actions for injunctive relief to be brought "by the person aggrieved...." 42 U.S.C. § 2000a–3(a). Neither of the individual plaintiffs, Long and Smith, works at the Orleans and plaintiffs have not alleged how they are in any way aggrieved by a violation occurring in an area accessible only to employees. Also, while the Supreme Court has long recognized that an association may have standing as the representative of its members, *see e.g., Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Disabled Rights Action Committee has not alleged that any of its members are employees of the Orleans or would have occasion to enter the working areas of the slot change kiosks. *See Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (for representative standing to lie, at least one member must have standing on their own). Accordingly, these plaintiffs do not have standing to challenge any non-compliance in the employee area of the slot change kiosks.

## V. Slot Change Kiosk Counters

■ Guideline 7.2(2) provides:

At ticketing counters, teller stations in a bank, registration counters in hotels and motels, box office ticket counters, and other counters that may not have a cash register but at which goods or services are sold or distributed either:

(i) a portion of the main counter which is a minimum of 36 in[ches] [ ] in length shall be provided with a maximum height of 36 in[ches] [ ]; or

(ii) an auxiliary counter with a maximum height of 36 in[ches] [ ] in length shall be provided with a maximum height of 36 in[ches] [ ]; or

(iii) equivalent facilitation....

The parties agree that two of the four slot change kiosks do not comply with Guideline 7.2(2). The magistrate judge found that the Orleans was nonetheless not in violation because Guideline 7.2(2) solely requires accessibility at the "main counter."

The magistrate judge's ruling was in error. The term "main counter" in Guideline 7.2(2)(i) serves only to distinguish the main counter at a particular station from the "auxiliary counter" at that same station discussed in Guideline 7.2(2)(ii). The provision applies to each of the stations, not just a "main" station. A merchant cannot circumvent the Guideline by declaring one counter to be the "main counter." Such an interpretation is contrary to a plain reading of the Guideline. We reverse the magistrate on this issue and remand for issuance of an injunction.

## VI. The Bar Counters

Guideline 5.2 reads, in pertinent part:

Where food or drink is served at counters exceeding 34 in[ches] [ ] in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 in[ches] [ ] in length minimum shall be provided in compliance with [Guideline] 4.32 or service shall be available at accessible tables within the same area.

■ The Orleans has three bars around its "pit" area. Two of these bars, the Alligator Bar and the Crawfish Bar, do not have counters that comply with Guideline 5.2. The other bar, the Mardi Gras Bar, has such a counter.

The magistrate judge held that the Orleans violated Guideline 5.2 because each of the bars might have a different ambiance, so exclusion from any one bar curtailed "full and equal enjoyment of these facilities." This ruling was in error. Guideline 5.2, while based on the general concept of full and equal enjoyment, contains two alternatives for compliance. First, the counter can be accessible. The parties agree that the Alligator and Crawfish Bars lack accessible counters. Second, service can be available at "accessible tables within the same area." The parties agree that the Mardi Gras Bar contains such seating. But the magistrate judge failed to determine whether the seating provided at the Mardi Gras Bar is "within the same area" as the Alligator and Crawfish Bars. The magistrate judge's ruling is vacated and the issue is remanded for decision as to whether the seating provid-

ed at the Mardi Gras Bar is "within the same area" as the Alligator and Crawfish Bars.

## VII. Nevada ADA Claim

■ In addition to their request for injunctive relief under the ADA, plaintiffs also sought damages under Nevada Revised Statutes 651.090.[5] A plain reading of that statute demonstrates, and plaintiffs do not dispute, that a recovery must be based on "actual damages" or, to put it another way, monetarily compensable injury. When the Orleans moved for summary judgment, it did so as to all of plaintiffs' claims. After the Orleans so moved, it was plaintiffs' responsibility to explain to the magistrate judge why a triable issue of fact existed on damages. Plaintiffs admit that they defaulted on this duty. Thus, summary judgment was properly granted for the Orleans on the plaintiffs' Nevada ADA claims.

## VIII. Attorney's Fees

We need not decide plaintiffs' appeal of their fee award because we must vacate the award to allow the district court to recalculate it in light of our holdings in this case.

## CONCLUSION

This appeal was timely filed. The magistrate judge's ruling that the non-compliance of the bathroom doors in the "standard" rooms does not require injunctive

---

**5.** Nev.Rev.Stat. 651.090 reads, in pertinent part:

1. Any person who:
(a) Withholds, denies, deprives or attempts to withhold, deny or deprive any other person of any right or privilege secured by NRS 651.070....
[I]s liable to the person whose rights pursuant to NRS 651.070 ... are affected for actual damages, to be recovered by a civil

action in a court in and for the county in which the infringement of the civil rights occurred or in which the defendant resides. Nev.Rev.Stat. 651.070 reads, in pertinent part:
All persons are entitled to the full and equal enjoyment of the ... facilities ... and accommodations of any place of public accommodation, without discrimination or segregation on the ground of ... disability.

relief is REVERSED and the issue is RE-MANDED for issuance of such injunctive relief. The magistrate judge's ruling that the pool cabanas comply with the ADA is AFFIRMED. The magistrate judge's ruling that the elevated employee work areas inside the slot change kiosks do not violate the ADA is REVERSED and the issue is REMANDED for issuance of proper injunctive relief. The magistrate judge's ruling that the slot change kiosk counters are not in violation of the ADA is REVERSED and the issue is REMANDED for issuance of proper injunctive relief. The magistrate judge's ruling that the seating at the bars in the "pit" area violates the ADA is VACATED and the issue is remanded for a factual determination pursuant to this opinion. The magistrate judge's ruling that plaintiffs did not allege injury sufficient to survive summary judgment on a claim under the Nevada ADA is AFFIRMED. Finally, the award of attorney's fees is VACATED and fees will be recalculated after proper disposition of the remanded issues. Costs on appeal to plaintiffs-appellants. The Motion to Strike Portions of Reply Brief for Coast Resorts, Inc., or, in the Alternative, for Leave to File Surreply Brief, by plaintiffs-appellants, is DENIED AS MOOT.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.