**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BYRON CHAPMAN,
*Plaintiff-Appellee*,

v.

PIER 1 IMPORTS (U.S.) INC., DBA
PIER 1 IMPORTS #1132,
*Defendant-Appellant*.

No. 12-16857

D.C. No.
2:04-cv-01339-
LKK-DAD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Argued and Submitted
November 19, 2014—San Francisco, California

Filed March 5, 2015

Before: Marsha S. Berzon and Johnnie B. Rawlinson,
Circuit Judges, and Elaine E. Bucklo, Senior District
Judge.[*]

Opinion by Judge Berzon

---

[*] The Honorable Elaine E. Bucklo, Senior District Judge for the U.S. District Court for the Northern District of Illinois, sitting by designation.

## SUMMARY[**]

### Americans with Disabilities Act

The panel affirmed in part and reversed in part the district court's summary judgment in favor of the plaintiff in an action under Title III of the Americans with Disabilities Act.

The district court held that the obstructions in shopping aisles and on a sales counter that the plaintiff encountered on numerous visits to a Pier 1 store violated his rights under the ADA, and entered a permanent injunction against Pier 1.

Affirming in part, the panel held that the obstructed aisles the plaintiff encountered were not permissible "isolated or temporary interruptions in . . . access" under the ADA Accessibility Guidelines, 28 C.F.R. § 36.211(b), because the evidence demonstrated that Pier 1 repeatedly failed to maintain accessible routes in its store.

The panel reversed, however, the district court's grant of summary judgment on the plaintiff's claim as to an accessible sales counter. The panel remanded to the district court to modify the injunction consistent with its opinion.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Minh N. Vu (argued), Seyfarth Shaw LLP, Washington, D.C.; Eden Anderson, Seyfarth Shaw LLP, San Francisco, California, for Defendant-Appellant.

Scottlyn J Hubbard IV, Law Offices of Lynn Hubbard, Chico, California, for Plaintiff-Appellee.

**OPINION**

BERZON, Circuit Judge:

Byron Chapman, a wheelchair user, challenged numerous alleged barriers to access at Pier 1 Imports (U.S.) Inc.'s store in Vacaville, California (the "Store") in a suit first filed in 2004. Chapman claimed that the alleged barriers denied him "full and equal" access to the Store in violation of the Americans with Disabilities Act ("ADA" or "the Act"). 42 U.S.C. § 12182(a). Seven years later, after an appeal to this Court, the district court held that the obstructions in shopping aisles and on sales counters Chapman encountered on numerous visits to the Store violated his rights under Title III of the ADA, 42 U.S.C. § 12181 *et seq.* Having so concluded, the court granted Chapman's motion for summary judgment and enjoined Pier 1 from obstructing its aisles and counters in the future.

Pier 1 appeals, arguing that the alleged obstructions are "temporary" barriers to access under the ADA's implementing regulations and so do not violate Chapman's rights under the Act. 28 C.F.R. § 36.211(b). We affirm in part, reverse in part, and remand.

## I. Background

This appeal is another chapter in this case's lengthy history. Byron Chapman is disabled by a spinal cord injury and requires the use of a motorized wheelchair when traveling in public. In July 2004, Chapman sued Pier 1 under the ADA, 42 U.S.C. § 12181 *et seq*., the Disabled Persons Act, Cal. Civ. Code § 54 *et seq*., and the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq*.[1] Chapman's 2004 Complaint requested injunctive relief requiring the Store to remove numerous barriers. Some of those barriers Chapman had personally encountered during his visits to the Store; others he had not, but, he alleged, they might impede his access during future visits. The challenged barriers — both those he had encountered and those he had not — were listed in an "Accessibility Survey" attached to the Complaint.

The parties filed cross-motions for summary judgment. Chapman's motion appended a new and separate list of unencountered barriers identified by his accessibility expert, Joe Card. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 943–44 (9th Cir. 2011) (en banc). The district court granted summary judgment for Pier 1 as to many of the challenged barriers, but ruled for Chapman as to seven barriers listed in the Card Report, none of which Chapman had personally encountered at the Store. *See id.* at 944.

---

[1] Chapman's state claims are entirely dependent on his ADA claim. He does not allege any conduct beyond that alleged to violate the ADA. *See, e.g.*, Cal. Civ. Code § 51(f) ("A violation of the right of any individual under the [ADA] shall also constitute a violation of this section"); Cal. Civ. Code § 54(c) ("A violation of the right of any individual under the [ADA] also constitutes a violation of this section").

Pier 1's position on appeal was that Chapman did not have Article III standing to challenge unencountered alleged barriers. Sitting en banc, we "clarif[ied] that when an ADA plaintiff has suffered an injury-in-fact by encountering a barrier that deprives him of full and equal enjoyment of the facility due to his particular disability, he has standing to sue for injunctive relief as to that barrier and other barriers related to his disability, even if he is not deterred from returning to the public accommodation at issue." *Id.* at 944. But, we held, Chapman still lacked standing under this standard to litigate his ADA claim. His complaint, we explained, did not allege "which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy . . . [or] identify how any of the alleged violations threatens to deprive him of full and equal access due to his disability if he were to return to the Store, or how any of them deter him from visiting the Store due to his disability." *Id.* at 955. We therefore vacated the grant of summary judgment and remanded to the district court.

After remand, Chapman filed a Second Amended Complaint, alleging that on numerous visits to the Store he had encountered two specific barriers violative of his rights under the ADA. First, he alleged, the Store's "customer service counter for disabled patrons" was cluttered by merchandise, a condition which prevented customers with disabilities from easily purchasing items. Second, he claimed, the Store did not maintain accessible routes for wheelchair users, as the Store's aisles were often obstructed with merchandise and other items. According to Chapman, these barriers interfered with his ability to "use and enjoy the goods, services, privileges, and accommodations offered at the store," and denied him "full and equal access."

Moreover, he alleged, Pier 1 "knew that these elements and areas of the stores were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled."

Pier 1 once again filed a motion for summary judgment, this time contending that any obstructions of the sales counter or the store aisles were "temporary," and so not violations of the ADA. More specifically, Pier 1 argued that the obstructions at the Store fell within the scope of DOJ regulations providing that "isolated or temporary" obstructions to accessibility do not violate the ADA. In support of its motion for summary judgment, Pier 1 submitted declarations by Kim R. Blackseth, Pier 1's disability accessibility expert, and Tracy Snow, the Store's manager since November 2004.

Blackseth stated in his expert report that (1) on the date of his inspection, the Store's customer service counter was "clear of goods"; (2) the "aisles throughout the store were the required minimum 36" wide and clear of goods"; and (3) he was "able to navigate the aisles in [his] electric Invacare wheelchair." The report contained photographs from the November 2011 inspection, depicting three aisles clear of obstructions.

According to Snow's declaration, she had "been a part of Pier 1 [sic] efforts to assist its mobility-impaired customers and to ensure the stores aisles are 36 inches wide, pursuant to Pier 1's policy." Snow explained that the Store's monthly merchandise plans directing employees on how to place merchandise for display "always include an instruction to maintain an aisle-width of at least 36 inches for the shopping aisles." She went on to report that because customers

commonly move merchandise around the Store, and because Store employees must move merchandise for customers or for stocking purposes, the Store "ha[d] adopted a number of strategies for ensuring the Store's shopping aisles" remained accessible — for example, directing that employees regularly walk around the Store with a yard stick to measure the width of Store aisles. Moreover, Snow stated, she and two other managers had personally measured all the shopping aisles at the Store, finding each to be at least 36 inches wide.

Chapman opposed Pier 1's motion and filed a cross-motion for summary judgment. He explained that on each of his eleven visits to the Store in 2011 and 2012, aisles were obstructed by merchandise or other items, such that "there were times that [he] could not reach or get to certain items, height or not, due to the aisles being blocked." Additionally, on at least on two occasions, the store's accessible sales counter, designed to be used by Pier 1 customers using wheelchairs, was cluttered with objects.

Chapman enlisted expert Joe Card once again to support his position. Card inspected the Store's aisles and accessible counter and reported numerous obstructions. Relying upon a number of photographs he had taken of alleged barriers, as well as his wife's declaration and the Card report, Chapman argued that there is no genuine dispute of material fact concerning whether merchandise blocked accessible routes and counters during his eleven visits to the store. He contended that these barriers were "not temporary, isolated occurrences . . . but, rather, a systematic pattern of abuse against the disabled."

The district court denied Pier 1's motion for summary judgment and granted summary judgment to Chapman. First,

the district court rejected Pier 1's argument that the ADA does not apply to movable obstructions, because Chapman himself, or store employees upon request, could clear the items.[2] "DOJ commentaries — and the ADA itself — refer to an obligation that defendant bears," the court observed, and the ADA was intended "to *eliminate* the stereotype of the helpless disabled person completely reliant on the assistance of able-bodied persons to come to their rescue." Therefore, the court ruled, accessible facilities "must be *maintained* in a condition that allows a disabled person to actually use them."

The district court then turned to Pier 1's defense that the barriers were only "temporary," and so did not violate the ADA. Noting that the applicable ADA regulations exempt liability for "isolated or temporary" interruptions in the availability of accessible features, the district court explained that applicable interpretive authorities indicate that "'[t]emporary,' as used in this context, is closer to 'transitory,' that is, an object that is unavoidably placed in the aisle, but with the intention of removing it as soon as possible." For instance, Pier 1's defense would be applicable where "boxes [were] temporarily placed in an accessible route *while being moved* from, say, 'the hall to the storage room.'" The district court found that Chapman's declaration and his expert report sufficiently established that the barriers Chapman encountered at the Store were not "transitory" in this sense.

---

[2] Pier 1 argued in the district court that "movable obstructions" do not violate the ADA. It does not appeal, however, the district court's conclusion that "nothing in the [DOJ's] commentaries or its technical assistance materials — nor in the ADA itself, its implementing regulations or the ADA Accessibility Guidelines . . . state or imply that 'movable obstructions' cannot violate the ADA."

After determining that Pier 1 failed to establish any other defense or genuine dispute of fact, the district court granted summary judgment to Chapman on his ADA claim and the dependent state law claims. The district court accordingly issued a permanent injunction enjoining Pier 1 from (1) blocking its aisles with merchandise or other items, "except for the unavoidable transitory blockages caused by re-stocking and similar activities"; and (2) cluttering its accessible sales counter with materials other than the "unavoidable transitory clutter resulting from the current use of that counter to check-out merchandise." Pier 1 timely appealed.

## II. Statutory and Regulatory Provisions

The ADA "provide[s] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title III of the Act, at issue here, "prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005) (citing 42 U.S.C. § 12182(a)). Retail stores, like Pier 1, are public accommodations. 42 U.S.C. § 12181(7)(E). The general anti-discrimination prohibitions of Title III, *id.* § 1282(b)(1), are supplemented by various, specific prohibitions, including requirements that entities providing public accommodations must (1) make "reasonable modifications in polices, practices, or procedures, when such modifications are necessary" to provide persons with disabilities full and equal enjoyment, *id.* § 12182(b)(2)(A)(ii); (2) "remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable," *id.* § 12182(b)(2)(A)(iv); and (3) "design and

construct facilities . . . that are readily accessible to and usable by individuals with disabilities," *id.* § 12183(a)(1).

The regulations implementing ADA Title III, *see id.* §12186(b), require that a public accommodation "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part." 28 C.F.R. § 36.211(a). "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines ('ADAAG')," which "lay out the technical structural requirements of places of public accommodation." *Chapman*, 631 F.3d at 945 (internal citations and quotation marks omitted); *see* 28 C.F.R. pt. 36, app. A (1991 ADAAG Standards).[3] "The ADAAG's requirements are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." *Chapman*, 631 F.3d at 945–46. "We have held that 'obedience to the spirit of the ADA' does not excuse noncompliance with the ADAAG's requirements." *Id.* at 945 (quoting *Long v. Coast Resorts, Inc.*, 267 F.3d 918, 923 (9th Cir. 2001)).

Three regulatory requirements underlie the current dispute. The ADAAG provide that "[t]he minimum clear width of an accessible route shall be 36 in[ches]." 28 C.F.R. pt. 36, app. A, § 4.3.3. The ADAAG also specify that, "[i]n department stores and miscellaneous retail stores where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of

---

[3] Available at http://www.ada.gov/1991standards/adastd94-archive.pdf (last visited on February 24, 2015).

each type shall have a portion of the counter which is at least 36 in (915mm) in length with a maximum height of 36 in (915 mm) above the finish floor." *Id.*, § 7.2(1). Finally, the generally applicable regulations explain that the requirement that public accommodations maintain "readily accessible" facilities and equipment "does not prohibit isolated or *temporary interruptions* in service or access due to maintenance or repairs." 28 C.F.R. § 36.211(b) (emphasis added). The parties' disagreement centers on the latter provision as applied to the aisle clearance width and accessible counter requirements.

Fleshing out the import of § 36.211(b), the Technical Assistance Manual ("Manual")[4] published by the DOJ "pursuant to Title III's directive to provide technical assistance to covered entities," *Miller v. California Speedway Corp.*, 536 F.3d 1020, 1026 (9th Cir. 2008), provides that "[w]here a public accommodation must provide an accessible route, the route must remain accessible and not blocked by obstacles such as furniture, filing cabinets, or potted plants," Manual § III-3.7000.[5] It also explains that "[a]n isolated instance of placement of an object on an accessible route would not be a violation, if the object is promptly removed." *Id.* DOJ commentaries to the final rule revising Title III's implementing regulations similarly note that "a temporary interruption that blocks an accessible route, such as restocking of shelves," is permitted by § 36.211(b). 75 Fed.

---

[4] Available at http://www.ada.gov/taman3.html (last visited Feb. 24, 2015).

[5] The Manual, as the DOJ's interpretation of its own regulations, is entitled to "substantial deference." *See Miller*, 436 F.3d at 1028.

Reg. 56,236, 56,270 (Sept. 15, 2010).[6] Like the Manual, the commentaries recognize that "accessible routes" or "other feature[s]" cannot be "built in compliance with the ADA, only to be blocked or changed later so that it is inaccessible," 73 Fed. Reg. 34,508, 34,523 (June 17, 2008):

> A common problem observed by the Department is that covered facilities do not maintain accessible routes. For example, the accessible routes in offices or stores are commonly obstructed by boxes, potted plants, display racks, or other items so that the routes are inaccessible to people who use wheelchairs. Under the ADA, the accessible route must be maintained and, therefore, these items are required to be removed. If the items are placed there temporarily—for example, if an office receives multiple boxes of supplies and is moving them from the hall to the storage room—then § 36.211(b) excuses such "isolated or temporary interruptions."

*Id.*

Also of some relevance, at least by analogy, is the DOJ's guidance with respect to the maintenance of equipment. The Manual explains that, while mechanical failures in "equipment such as elevators or automatic doors" are bound

---

[6] The DOJ issued a notice of proposed rulemaking in 2008 proposing amended regulations designed to adopt updated accessibility standards and otherwise revise existing Title III regulations. *See* 73 Fed. Reg. 34,508 (June 17, 2008). A final rule adopting these updates and revisions issued in 2010. *See* 75 Fed. Reg. 56,236 (Sept. 15, 2010).

to happen, "the obligation to ensure that facilities are readily accessible to and usable by individuals with disabilities would be violated, if repairs are not made promptly or if improper or inadequate maintenance causes repeated and persistent failures." Manual § III-3.7000. Likewise, the DOJ commentaries to the rule implementing Title III state that, while "temporary obstructions or isolated instances of mechanical failure would not be considered violations of the [ADA]," "allowing obstructions or 'out of service' equipment *to persist beyond a reasonable period of time* would violate this part, as would repeated mechanical failures due to improper or inadequate maintenance." 56 Fed. Reg. 35,544, 35,562 (July 26, 1991) (emphasis added).

## III.  Analysis

### A.  Aisles

Applying the interpretive aids just summarized, we conclude, as did the district court, that the obstructed aisles Chapman encountered while visiting the Store were not "isolated or temporary interruptions in . . . access" under 28 C.F.R. § 36.211(b).

Chapman encountered several obstructed and blocked aisles on *each* of eleven separate visits to the Store in 2011 and 2012.  The photographs Chapman submitted with his declaration depict a number of aisles that contain merchandise or other items, resulting in a functional width measurably less than the 36 inches required under the ADAAG.  Many of the aisles appear inaccessible due to the presence of large items, such as furniture (armchairs and tables), or display racks holding merchandise and ladders. Some of the aisles blocked to wheelchair users would have

been accessible to nondisabled customers, who could have walked around or along the side of the blockage.

Additionally, Card's expert report notes that when he visited the Store — on a different day than Chapman's visits — he "witnessed a number of aisles blocked by merchandise or reduced in width below 36 inches." The photographs Card took during his November 3, 2011, inspection confirm that some of the aisles were blocked to wheelchair users.

To dispute this evidence, Pier 1 submitted, first, an expert report. The report states that, on two inspections of the Store in October and November 2011, the "aisles throughout the store were the required minimum 36" wide and clear of goods," and that the expert was "able to navigate the aisles in [his] electric Invacare wheelchair." That the Store's aisles were clear on two visits by Pier 1's expert does not create a triable issue of fact as to the state of the aisles on the eleven occasions when Chapman visited the Store in 2011 and 2012. If those occasions are sufficient to demonstrate non-compliance with the ADA — as we ultimately conclude they are — it does not matter that there was compliance on two occasions when Pier 1's hired expert inspected the Store.

Pier 1's other factual submission in support of its summary judgment motion is the Snow Declaration. That Declaration, Pier 1 maintains, shows that the Store had "policies and procedures" in place to ensure that the aisles remained unobstructed by merchandise, and so "undisputably established that any items that were in the aisles or on the

accessible check-out counter were 'transitory' or 'in transit' to their proper location."[7]

The existence of policies designed to limit obstructions does not establish that the obstructions that Chapman encountered were "temporary." Instead, Chapman's evidence demonstrates that these policies and procedures were either ineffective in preventing frequent blocking of the aisles or honored in the breach.

Moreover, as the district court observed, "the Snow Declaration . . . did not ascribe the aisle blockages to merchandise stocking," but to the fact that any obstructions would be moved on request or in time. The DOJ interpretive authorities make clear that the presence of items in aisles is not "temporary" for the purposes of § 36.211(b) just because the obstructing items in the aisles were placed there by customers and would have been moved on request or eventually. The presence of blocking items was fairly frequent during Chapman's visits to the Store, not a single or isolated occurrence. Nor is there any indication that the interruption of access was "due to maintenance or repairs," *id.*; Manual § III-3.7000, or occurred in the course of moving the items from one place to another, or during re-stocking, *see* 75 Fed. Reg. at 56,270; 73 Fed. Reg. at 34,523.

We note in this connection that given its frequency, the aisle access problem must be viewed systemically, not as a series of individual barriers to access. Removing one

---

[7] The district court excluded the Snow Declaration from consideration on summary judgment. As we would affirm the grant of summary judgment to Chapman with or without the Snow Declaration, we do not consider whether the exclusion was an abuse of discretion.

obstructing object does not assure accessible aisles where it is likely that soon thereafter another item will be moved and create a blockage. Thus, the evidence that Chapman encountered "repeated and persistent failures" in accessing the aisles, Manual § III-3.7000, confirms that the Store failed to remedy the problem "promptly," — that is, within a "reasonable period of time," 56 Fed. Reg. at 35,562 — rendering its maintenance "improper or inadequate." Manual § III-3.7000.

To be sure, the "regulations implementing the ADA do not contemplate perfect service." *Midgett v. Tri-County Metro. Transp. Dist. of Or.*, 254 F.3d 846, 849 (9th Cir. 2001). Consequently, "an isolated or temporary hindrance to access does not give rise to a claim under the ADA." *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 589 (S.D. Tex. 2014) (citing cases). But the cases so holding have generally concerned truly *isolated* failures to maintain readily accessible facilities.

*Foley v. City of Lafayette, Ind.*, 359 F.3d 925 (7th Cir. 2004), for example, addressed a plaintiff's claim that a train station's failure to clear snow from ramps and repair an elevator after a weekend of significant snowfall violated the ADA. Noting that the "train station is, in the normal course of operation, fully accessible to individuals with disabilities," *Foley* determined that the single "weather-related breakdown of elevator service" at issue was not a violation of the ADA. *Id.* at 928–30. In so holding, the Seventh Circuit explained that "given the conditions, [the elevator] was repaired promptly," and that "there was no evidence from which a reasonable inference could be drawn that other disabled persons were denied access because of frequent elevator breakdowns." *Id.* at 930; *see also Tanner v. Wal-Mart Stores,*

*Inc.*, No. 99-44-JD, 2000 WL 620425, at \*6 (D.N.H. Feb. 8, 2000) (holding that a store's single "failure to remove shopping carts and failure to properly remove ice and snow from [a] handicapped parking space does not constitute a Title III violation"). Likewise, *Sharp v. Capitol City Brewing Co., LLC*, 680 F. Supp. 2d 51, 59 (D.D.C. 2010), denied the plaintiff's ADA claim based on an empty ADA-compliant toilet paper dispenser encountered on a single visit to the defendant restaurant. The court held that the plaintiff "failed to show that this one instance of the dispenser being empty was anything more than an 'isolated or temporary interruption[ ] in . . . access.'" *Id.* (alteration in original) (quoting 28 C.F.R. § 36.211(b)).

Here, in contrast, the evidence demonstrates that Pier 1 repeatedly failed to maintain accessible routes in its Store. Furthermore, while the defendant did not cause the obstruction of access in *Foley*, at least some of the obstructions here appear to have resulted from the affirmative actions of Pier 1 and its employees. For example, the large step ladders obstructing the aisles on Chapman's visits, were almost surely placed there by the Store's staff rather than by customers. *See also Madden v. Del Taco, Inc.*, 58 Cal. Rptr. 3d 313, 320 (2007) (holding that a restaurant's placement of a concrete trash container on entrance ramp, which "appear[ed] to be a result of the affirmative conduct of [defendant]," was not exempted under § 36.211(b)).

In sum, Chapman's evidence establishes that the barriers he repeatedly encountered in the Store's aisles were not "temporary" within the meaning of § 36.211(b). We therefore affirm the grant of summary judgment to Chapman on his claim that the Store failed to maintain readily-

accessible aisles, and affirm the denial of summary judgment to Pier 1.

## B. Sales Counter

We reverse, however, the district court's grant of summary judgment on Chapman's ADA claim as to the accessible sales counter.

Chapman offers insufficient evidence that the obstructions on the counter violated his rights under Title III of the ADA. In contrast to the items blocking the aisles for wheelchair users, the items on the otherwise properly accessible sales counter depicted in Chapman's photographs were not a barrier to the use of the counter by persons with disabilities.

For example, the asserted "clutter[]," on the sales counter detailed in Chapman's expert report consisted of "a display of books in a basket, three coffee cups, and a movable store telephone."[8]  There is no evidence that the presence of these various small items on the otherwise accessible sales counter deprived wheelchair users of "full and equal" access to the use of the counters for their intended use — placing items for purchase and transacting sales.  42 U.S.C. § 12182(a).

Additionally, the record indicates that the clutter Chapman encountered at the accessible sales counter caused, at most, "temporary or isolated interruptions in . . . access" under § 36.211(b).  Notably, unlike the shopping aisles, which were non-ADA-compliant for wheelchair users on all

---

[8] Snow stated in her declaration that she was present when Chapman's expert made a purchase, and that the items on the counter "did not interfere" with customers placing or purchasing merchandise.

eleven visits Chapman made to the Store in 2011 and 2012, there were items on the sales counter on only two or three visits. Moreover, on those occasions, Chapman was "eventually" able to put the merchandise he wished to purchase on the counter, after the Pier 1 employee behind the counter moved the obstructing items. Thus, unlike the aisle situation, Pier 1 did "promptly remove[]" the obstructing items from the sales counter, Manual § III-3.7000, so the difficulty did not "persist beyond a reasonable period of time," 56 Fed. Reg. at 35,562.

In sum, Chapman was not entitled to summary judgment on his ADA claim concerning the accessible sales counter.

## IV. Conclusion

We affirm the district court's grant of summary judgment on Chapman's claim that the Store's failure to maintain accessible aisles violated his rights under the ADA. We also affirm the grant of summary judgment on Chapman's state law claims, which, as noted above, are entirely dependent on establishing an ADA violation. We reverse the grant of summary judgment as to Chapman's claim concerning the Store's accessible sales counter, and remand to the district court to modify the injunction consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**